TOBIN v CIVIL SERVICE COMMISSION

Docket No. 65596. Argued January 6, 1982 (Calendar No. 3).—Decided December 23, 1982.

John L. Tobin and four other classified civil service employees brought a class action in the Ingham Circuit Court, seeking to enjoin the Civil Service Commission and the Department of Civil Service from releasing a list of the names and addresses of all classified civil service employees to several labor organizations. The plaintiffs claimed that the Freedom of Information Act prohibits the disclosure and that disclosure would violate their right of privacy. The circuit court, James T. Kallman, J., granted summary judgment for the plaintiffs. The Court of Appeals, Danhof, C.J., and Beasley and Cynar, JJ., reversed (Docket No. 78-4312). The plaintiffs appeal.

In an opinion by Justice Ryan, joined by Chief Justice Fitzgerald and Justices Kavanagh, Williams, Levin, and Coleman, the Supreme Court *held:*

The Freedom of Information Act does not prohibit the disclosure of the names and addresses of classified civil service employees, and such disclosure does not infringe on the employees' common-law or constitutional right of privacy.

1. The Freedom of Information Act authorizes, but does not require, nondisclosure of public records which fall within the enumerated exemptions. The language of the act, "*may* exempt from disclosure", is permissive rather than mandatory. The Legislature did not intend to require nondisclosure. Nothing in the title of the act or its statement of policy suggests that the problem addressed was excessive disclosure of governmental information. The enforcement provisions of the act do not provide for actions to compel nondisclosure; rather, the thrust of the provisions is to compel disclosure of public documents.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 66 Am Jur 2d, Records and Recording Laws §§ 32-36.

What are "records" of agency which must be made available under the Freedom of Information Act § 5 USCS § 552(a)(3)). 50 ALR Fed 336.

What statutes specifically exempt agency records from disclosure under 5 USCS § 552(b)(3). 47 ALR Fed 439.

Because the plaintiff must rely on other substantive law in an action to prevent disclosure of information exempted from disclosure by the Freedom of Information Act, such an action must be evaluated as if the act did not exist.

2. The disclosure of the names and addresses of the plaintiffs to public employee labor organizations will not violate their common-law right of privacy. Names and addresses ordinarily are not personal, intimate, or embarrassing bits of information. Any supposed right to keep such information secret is riddled with exceptions. The method by which the information was obtained or by which it is proposed to be released would not be intrusive or objectionable to the reasonable person. Under the state and federal constitutions, there likewise is no infringement of the plaintiffs' right of privacy. There is no reasonable expectation of privacy in a person's identity or in the location of his residence or place of work. The contemplated disclosures would be to public employee labor organizations, not to the general public. The plaintiffs have not alleged any imminent danger which would result from the disclosures.

3. The plaintiffs also argue that disclosure would violate the Civil Service Commission's constitutional authority to regulate the conditions of state employment. The decision by the Civil Service Commission to disclose the names and addresses cannot infringe upon its own authority. Since it is unnecessary to decide whether the Freedom of Information Act requires disclosure in this case, it is unnecessary to decide whether the act unconstitutionally infringes upon the commission's authority.

Affirmed.

98 Mich App 604; 296 NW2d 320 (1980) affirmed.

1. PRIVACY — FREEDOM OF INFORMATION ACT — CIVIL SERVICE EM-
PLOYEES — NAMES AND ADDRESSES.

The Freedom of Information Act does not prohibit the disclosure of the names and addresses of classified civil service employees, and such disclosure does not infringe upon the employee's common-law or constitutional right of privacy (MCL 15.231 *et seq.;* MSA 4.1801[1] *et seq.).*

2. PRIVACY — FREEDOM OF INFORMATION ACT — PUBLIC DOCUMENTS
— DISCLOSURE — EXCEPTIONS.

Neither the title of the Freedom of Information Act nor its statement of policy suggest that the Legislature addressed a problem of excessive disclosure of governmental information or that it intended to require nondisclosure; the thrust of the enforcement provisions of the act is to compel disclosure of

public documents, and no provision is made for actions to compel nondisclosure (MCL 15.235, 15.240, 15.243; MSA 4.1801[5], 4.1801[10], 4.1801[13]).

3. PRIVACY — CONSTITUTIONAL LAW — COMMON LAW — PERSONAL INFORMATION.

    Disclosure of the names and addresses of classified civil service employees to public employee labor organizations would not violate their common-law or constitutional right of privacy in a case where no imminent danger which would result from disclosure was alleged because such information is not personal, intimate, or embarrassing, the method of obtaining or releasing the information would not be objectionable or intrusive to a reasonable person, and there is no reasonable expectation of privacy in a person's identity or location of his residence or place of work.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Casey* and *John Wernet,* Assistants Attorney General, for the defendants.

RYAN, J. This case is a so-called "reverse" Freedom of Information Act case in which the plaintiffs seek to enjoin rather than compel disclosure of public records. The plaintiffs are five classified civil service employees of the State of Michigan who have filed a class action seeking to enjoin the defendants, the Michigan Civil Service Commission and the Department of Civil Service, from releasing to several labor organizations a list of names and addresses of all classified civil service employees.

The plaintiffs assert that 1) the Freedom of Information Act (FOIA)[1] affirmatively prohibits the contemplated disclosure, 2) the FOIA does not

---

[1] MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.*

require disclosure of the names and addresses, 3) disclosure would constitute an enjoinable violation of plaintiffs' right of privacy, and, finally, 4) disclosure would violate the Civil Service Commission's authority to regulate all conditions of employment under Const 1963, art 11, § 5. While we find it unnecessary to decide whether the FOIA requires disclosure or whether FOIA-mandated disclosure would infringe upon the authority of the Civil Service Commission, we reject the remainder of the plaintiffs' arguments. We hold that the FOIA never prohibits disclosure, and that these plaintiffs are not entitled to injunctive relief under their common-law or constitutional right of privacy. Accordingly, the decision of the Court of Appeals is affirmed.

I

In the fall of 1977, the defendant state agencies received several requests for a list of names and addresses of all classified civil service employees.[2] The requests were submitted by various labor organizations which sought to use the information for the purpose of soliciting members in furtherance of their organizational campaigns among those state employees. A determination had already been made as to the appropriate division of state employees into bargaining units for representation elections which would culminate in certifica-

[2] On October 4, 1977, Local 31-M of the Service Employees International Union requested the names and home addresses of all state classified employees. The request was granted. On November 7, 1977, the Organization of Classified State Employees filed a written request for the same information. On November 9, 1977, the defendant received a written request for the list from the Welfare Employees Union. In a letter dated November 8, 1977, the Michigan State Employees Association requested a magnetic tape, rather than a hard copy printout, of names and addresses of all state classified employees who were not dues-paying members of MSEA.

tion, for the first time, of labor organizations to represent the various units of employees. The defendants complied with the first of the requests in October of 1977, and indicated their intention to comply with the later requests for the list on November 15, 1977. On November 14, 1977, the executive secretary of the MSEA, one of the requesting unions, informed the defendants that pleadings to obtain judicial relief would be filed before the information was released. On November 15, 1977, the five named plaintiffs filed this action in the Ingham Circuit Court and obtained a temporary restraining order blocking the release of the names and addresses. Four of the five named plaintiffs were members of the MSEA, having authorized the payment of their dues through payroll deductions. The MSEA orally withdrew its request on November 15, 1977, and provided written confirmation that it wanted its request held in abeyance on November 17, 1977.

Two labor organizations, the Organization of Classified State Employees and the Welfare Employees Union, sought to intervene as defendants in order to argue that the FOIA compelled disclosure of the requested names and addresses. The plaintiffs opposed the intervention. A hearing was conducted on December 9, 1977, and the circuit judge denied the motion to intervene in an opinion filed December 21, 1977. No appeal was taken from this denial.

On May 25, 1978, the circuit judge entered an order clarifying the temporary restraining order which indicated that the restraining order of November 15, 1977, did not prohibit the Civil Service Commission from releasing the names and addresses of state employees pursuant to commission

rule 5(1), the so-called "ten percent" rule. That rule authorizes the release, within 15 days of a representation election, of a list of names and addresses of state employees working within a particular bargaining unit to the bona fide unions that will appear on the ballot.[3] This clarifying modification was made at the suggestion of the plaintiffs.[4]

The defendants then filed a motion for summary judgment. On September 28, 1978, the circuit court issued an opinion denying the defendant's motion for summary judgment and instead granted summary judgment in favor of the plaintiffs. The defendants appealed to the Court of Appeals, which reversed. *Tobin v Civil Service Comm,* 98 Mich App 604; 296 NW2d 320 (1980). The plaintiffs' application for leave to appeal to this Court was granted upon reconsideration. 410 Mich 908 (1981).

## II

The plaintiffs argue that if a public record is one of those named in the FOIA as "exempt from

[3] "5. Conduct of Elections
"(1) The [state personnel] director shall provide the petitioner [i.e. the employee organization with a 30 percent showing of interest in a unit], any intervenor with a 10 percent showing of interest, and the employer with a list of all eligible voters in the most appropriate unit together with their addresses of record within 15 calendar days of the director's decision to conduct the election."

[4] The requirement for disclosure of a showing of interest by at least 10% of the employees of the proposed unit would favor larger labor organizations which had already obtained a 10% showing of interest. Unions attempting to obtain that initial 10% showing would not have the benefit of the list. The list would also be denied to intervening unions with a 10% showing until the decision to conduct an election was made. This would also tend to favor the union with the largest pre-campaign support, shortening the time during which a challenging union could effectively present its position to the employees.

disclosure" the statute affirmatively prohibits disclosure.

We conclude that the language of the act, the intent of the Legislature, public policy, and federal case law support the opposite conclusion, and we hold, therefore, that the Michigan FOIA authorizes, but does not require, nondisclosure of public records falling within a FOIA exemption.

The language of the FOIA is clear and unambiguous:

"A public body *may* exempt from disclosure as a public record under this act: [the lengthy list of FOIA exemptions follows]." MCL 15.243; MSA 4.1801(13). (Emphasis added.)

The Court of Appeals interpreted the term "may" in a permissive rather than mandatory sense.[5] The plaintiffs argue that the Court of Appeals clearly erred in interpreting "may" to mean "may" rather than "shall". We disagree. The words "may" and "shall" are to be given their ordinary and primarily accepted meaning. *Smith v Amber Twp School Dist No 6,* 241 Mich 366, 369; 217 NW 15 (1928); *Breen v Kehoe,* 142 Mich 58, 62; 105 NW 28 (1905).[6]

---

[5] "Notably absent from the FOIA universe is a class of public records that must be preserved from disclosure. It is not possible to interpret public bodies' privilege to refuse disclosure of exempted materials as an obligation to protect those records from public view. The act itself demonstrates the Legislature's ability to distinguish between 'may' and 'shall'." *Tobin, supra,* p 608.

[6] The case of *McBrian v Grand Rapids,* 56 Mich 95; 22 NW 206 (1885), cited by the plaintiffs, does not control here. In that case, the statute stated that the city "may contract with the lowest responsible bidder" for its sewer construction project. This Court interpreted the statute to mean that the city "may" reject all bids and readvertise the project, but if any bid is accepted, it "shall" be the bid of the lowest responsible bidder. This interpretation resolved an ambiguity, effectuated the legislative intent, and is not contrary to our decision in this case.

We find nothing to indicate that the Legislature intended the Freedom of Information Act to require nondisclosure. The Michigan Constitution of 1963, art 4, § 24, requires that the object of a law shall be expressed in its title. Nothing in the title of the FOIA[7] or its statement of "public policy"[8] suggests that the problem being addressed was the excessive disclosure of governmental information. While the federal government and some state legislatures have responded to the problems of government overdisclosure by passing so-called "privacy acts",[9] the Michigan Legislature has not done so.

Further evidence that the Legislature intended the FOIA to be purely a disclosure statute is found in the enforcement provisions of the act. Under MCL 15.240(1); MSA 4.1801(10)(1), an action may be commenced in circuit court to compel disclosure of public records; no provision is made for an action to forbid disclosure. Only persons asserting the right to inspect a public record are eligible for an award of attorney fees or punitive damages, MCL 15.240(4) and (5); MSA 4.1801(10)(4) and (5), and only a person requesting public documents is authorized to commence an action in circuit court under FOIA. MCL 15.235(7); MSA 4.1801(5)(7). The

[7] The title to 1976 PA 442 reads:

"AN ACT to provide for public access to certain public records of public bodies; to permit certain fees; to prescribe the powers and duties of certain public officers and public bodies; to provide remedies and penalties; and to repeal certain acts and parts of acts."

[8] MCL 15.231; MSA 4.1801(1):

"(1) This act shall be known and may be cited as the 'freedom of information act'.

"(2) It is the public policy of this state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process."

[9] 5 USC 552(a) *et seq.;* Cal Penal Code § 630 *et seq.*

absence of any provisions in the statute allowing third parties such as these plaintiffs to bring an action to compel nondisclosure is persuasive evidence that the FOIA did not create such rights. Any asserted right by third parties to prohibit disclosure must have a basis independent of the FOIA.

The plaintiffs argue that it would be against public policy to permit a public body to disclose information exempted from disclosure under the FOIA.[10] We can accept plaintiffs' argument that most information exempted from disclosure under FOIA should not be routinely disclosed without accepting the argument that the FOIA absolutely prohibits such disclosures. In the usual case, law enforcement agencies will not reveal confidential information furnished only by a confidential source. Nondisclosure is authorized by MCL 15.243(1)(b)(iv); MSA 4.1801(13)(1)(b)(iv). But suppose a confidential source informs the police that a dangerous criminal drives a certain vehicle and fits a certain description. Does the FOIA foreclose the police from broadcasting the information to the general public in the hope that the public will provide further information leading to the arrest of the suspect? We think not. In the usual case, law enforcement agencies refuse to disclose law enforcement investigative techniques or procedures. MCL 15.243(1)(b)(v); MSA 4.1801(13)(1)(b)(v). But if that prohibition were absolute, it would be

[10] For example, information of a personal nature where public disclosure would constitute a clearly unwarranted invasion of privacy, MCL 15.243(1)(a); MSA 4.1801(13)(1)(a); records compiled for law enforcement purposes, when disclosure would interfere with law enforcement proceedings, deprive a person of a right to a fair trial, invade personal privacy, disclose the identity of a confidential source, or endanger law enforcement personnel, MCL 15.243(1), subds (b) and (c); MSA 4.1801(13)(1), subds (b) and (c); and records specifically exempt from disclosure by statute, MCL 15.243(1)(d); MSA 4.1801(13)(1)(d), would, by definition, cause harm if released.

extremely difficult to adequately train new police officers without revealing investigative techniques or procedures.

The ability to make a discretionary disclosure not required by the FOIA does not allow a public body to disregard other substantive limitations on disclosure. For example, the right of privacy discussed in part IV of this opinion, the Administrative Procedures Act,[11] or other laws may affirmatively prohibit disclosure of information under certain circumstances. However, a party suing to prevent disclosure must rely on that substantive law to prevent disclosure. The FOIA provides no assistance for the plaintiff in a reverse FOIA lawsuit. In effect, a reverse FOIA suit to prevent disclosure of information within a FOIA exemption must be evaluated as if the FOIA did not exist.

The United States Supreme Court reached the same result in *Chrysler Corp v Brown,* 441 US 281, 292-293; 99 S Ct 1705; 60 L Ed 2d 208 (1979), a case interpreting the federal FOIA[12] counterpart of the Michigan FOIA exemption provision:

"[T]he FOIA is exclusively a disclosure statute * * *.

"[T]he FOIA by itself protects the submitters' interest in confidentiality only to the extent that this interest is endorsed by the agency collecting the information.

"Enlarged access to governmental information undoubtedly cuts against the privacy concerns of nongovernmental entities, and as a matter of policy some

---

[11] MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* An agency decision to disclose or to deny disclosure might be reviewable under the standards of MCL 24.306; MSA 3.560(206). However, the plaintiffs in this lawsuit do not allege that the defendants' decision to release the names and addresses under these circumstances violated the Administrative Procedures Act.

[12] 5 USC 552(a) *et seq.* Specifically, 5 USC 552(b) provides that "[t]his section does not apply to matters that are * * * [followed by the list of exemptions]".

balancing and accommodation may well be desirable. We simply hold here that Congress did not design the FOIA exemptions to be mandatory bars to disclosure." (Footnote omitted.)

Since the Michigan FOIA was patterned after the federal FOIA, decisions under the federal law are often instructive and, in this instance, persuasive.

We hold that the Michigan FOIA does not prohibit the disclosure of the list of names and addresses of all classified civil service employees.

## III

Our resolution of the first issue makes it unnecessary to decide whether the Freedom of Information Act requires disclosure of the list of names and addresses. While the defendants initially believed that the FOIA required disclosure, they now place total reliance on their authority to make a discretionary disclosure. Since we hold that the allegation that the information falls within the privacy exemption does not prevent the discretionary disclosure contemplated by the defendants, any further interpretation of the FOIA would be obiter dictum. The fact that the defendants agree with the plaintiffs that the information falls within the privacy exemption and that its disclosure is, therefore, not required, is an independent reason not to decide the issue. Without the benefit of genuine advocacy, the Court will not undertake to construe the privacy exemption authoritatively.

## IV

In support of their claim that the contemplated disclosure of names and addresses should be enjoined, the plaintiffs cite the common-law right of

privacy, the constitutional right of privacy, and the specific facts of this controversy that support their claim for injunctive relief.

The common-law right of privacy is said to protect against four types of invasion of privacy.

" '1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
" '2. Public disclosure of embarrassing private facts about the plaintiff.
" '3. Publicity which places the plaintiff in a false light in the public eye.
" '4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.' Prosser, *Privacy,* 48 Cal L Rev 383, 389 (1960)." *Beaumont v Brown,* 401 Mich 80, 95, fn 10; 257 NW2d 522 (1977); see also 3 Restatement Torts, 2d, § 652A, p 376.

The plaintiffs claim that the disclosure of their names and home addresses constitutes an intrusion into their seclusion, solitude, or private affairs. Adopting the three-part test of the Court of Appeals in *Beaumont,* the plaintiffs argue that all three elements are present.

"Intrusion as a branch of the right to privacy has three elements: (1) the existence of a secret and private subject matter; (2) a right possessed by plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter by defendant through some method objectionable to the reasonable man." *Beaumont v Brown,* 65 Mich App 455, 462; 237 NW2d 501 (1975), *rev'd* 401 Mich 80 (1977).

Names and addresses are not ordinarily personal, intimate, or embarrassing pieces of information. The supposed right to keep such information se-

cret is at best riddled with exceptions.[13] We agree with Prosser's view, as expressed in 3 Restatement Torts, 2d, § 652D(a), Comment, p 387, that

"Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part. Thus he must expect the more or less casual observation of his neighbors as to what he does, and that his comings and goings and his ordinary daily activities will be described in the press as a matter of casual interest to others. The ordinary reasonable man does not take offense at a report in a newspaper that he has returned from a visit, gone camping in the woods or given a party at his house for his friends."

The plaintiffs' claim that disclosure of their names and addresses would intrude upon their privacy must also fail because the plaintiffs have suggested absolutely nothing objectionable about the method by which the information was obtained or is proposed to be released.

In rejecting any invasion of privacy based on an "intrusion" theory, the Court of Appeals in *Beau-*

---

[13] For availability of driver's license information, including record of traffic offenses and the duty to notify of address changes, see MCL 257.204a; MSA 9.1904(1), MCL 257.208; MSA 9.1908, MCL 257.315; MSA 9.2015, MCL 257.316; MSA 9.2016. For availability of vehicle registration lists, see MCL 257.232; MSA 9.1932, authorizing the Secretary of State to sell the lists to any person for a reasonable price. Names and addresses involved in the conveyance of real property are open to public inspection in the office of the Register of Deeds. MCL 565.25; MSA 26.543, MCL 565.551; MSA 26.791. Property tax assessment rolls and indexes may be inspected. MCL 211.10a; MSA 7.10(1), MCL 211.25a; MSA 7.25(1). Information on corporate officers and directors is available through the Corporation and Securities Bureau. MCL 450.1131; MSA 21.200(131). Names, addresses, ages, and other information required by the Director of Public Health in an application for a marriage license are matters of record. MCL 551.102; MSA 25.32. The rolls of registered voters and the elections in which they have voted are available for inspection and copying. MCL 168.516; MSA 6.1516, MCL 168.522; MSA 6.1522.

*mont, supra,* p 463, noted that the information disclosed "was simply available as part of the employer-employee relationship", while the information requested was secured by merely writing a letter. That is exactly the situation in this case. Neither of these means are "intrusive" or objectionable to the reasonable person. The only aspect of the contemplated disclosure offensive to the plaintiffs is the fact of disclosure, not the method by which it was obtained.

No other jurisdiction has ever recognized a cause of action based on the release of an individual's name and address, without more.[14] In *Shibley v Time, Inc,* 45 Ohio App 2d 69; 74 Ohio Op 2d 101; 341 NE2d 337 (1975), the court held that the defendants' practice of selling subscription lists to direct mail advertisers without the subscriber's consent did not constitute an invasion of the subscriber's common-law right of privacy.[15] If the

[14] Nor do I read the separate opinion in *Falk v State Bar of Michigan,* 411 Mich 63, 161-164; 305 NW2d 201 (1981) (WILLIAMS, J., joined by COLEMAN, C.J.), as suggesting that the use of the State Bar membership list for commercial mailings violates the recipient's common-law right of privacy. My colleague's opinion noted that under *Rowan v United States Post Office Dep't,* 397 US 728; 90 S Ct 1484; 25 L Ed 2d 736 (1970), the addressee of any advertisement has an absolute right to prevent the sender from further mailings to the named addressee. 39 USC 4009, now 39 USC 3008. My brother's opinion merely noted that the State Bar is not exempt from the strictures of 39 USC 3008. Nothing in *Rowan,* or the separate opinion in *Falk,* suggests that the recipient of unwanted advertising may neglect to exercise his right to remove his name from the list and then sue for damages on the basis of a common-law invasion of privacy theory.

See also *Consolidated Edison Co of New York v Public Service Comm of New York,* 447 US 530, 542, fn 11; 100 S Ct 2326; 65 L Ed 2d 319 (1980):

"Although this Court has recognized the special privacy interests that attach to persons who seek seclusion within their own homes, see *Rowan* * * *, the arrival of a billing envelope is hardly as intrusive as the visit of a door-to-door solicitor. Yet the Court has rejected the contention that a municipality may ban door-to-door solicitors because they may invade the privacy of households. *Martin v City of Struthers,* 319 US 141, 146-147; 63 S Ct 862; 87 L Ed 1313 (1943)."

[15] The plaintiffs' suit against the publishers of *Time Magazine,*

publication of names and addresses of specific persons was made with the expectation and hope that it would, for example, bring others to molest them and their families, a different result might be required.[16] No such allegations are present in this case. Certainly the expectation that the person listed will be subjected to unsolicited messages from the public employee unions is insufficient to create an actionable invasion of privacy, since the mailing of unsolicited messages not amounting to harassment is not actionable. *Bradshaw v Michigan National Bank,* 39 Mich App 354; 197 NW2d 531 (1972); see Anno, *Unsolicited Mailing, Distribution, House Call, or Telephone Call as Invasion of Privacy,* 56 ALR3d 457, and cases cited therein. We find no violation of the common-law right of privacy in the contemplated release of names and addresses of public employees to a public employee labor organization.

The plaintiffs also rely upon their right of privacy under the Michigan and federal constitutions. The case most closely on point is *NLRB v British*

---

*Esquire, Playboy,* and *Ladies Home Journal* alleged that prior consent should be required before one's name and address could be sold, since the original subscription contract did not explicitly provide for such a sale. The court disagreed, holding that the plaintiffs had failed to state a claim under any recognized theory of invasion of privacy and refusing to extend the common law to recognize such a claim.

[16] *Cf. McNutt v New Mexico State Tribune Co,* 88 NM 162; 538 P2d 804 (1975), *cert den* 88 NM 318; 540 P2d 248 (1975), discussed in Anno, *Publication of Address as Well as Name of Person as Invasion of Privacy,* 84 ALR3d 1159. In *McNutt,* a newspaper editor published the names and home addresses of two police officers involved in a shootout in which two members of an organization known as the "Black Berets" were killed. It was alleged that the addresses had no news value but were published with the expectation that it would bring persons to the addresses to molest the plaintiffs and their families. The publication of the names and addresses was supposedly in retaliation for the officers' refusal to give information to the newspaper. The court held that whatever minimal invasion of privacy might have occurred was insufficient to overcome the defendant's First Amendment privilege.

*Auto Parts, Inc,* 266 F Supp 368 (CD Cal, 1967), *aff'd* 405 F2d 1182 (CA 9, 1968), *cert den sub nom Teledyne v NLRB,* 394 US 1012; 89 S Ct 1625; 23 L Ed 2d 39 (1969). In the *British Auto Parts* case, it was held that the employees' constitutional right of privacy was not abridged by the ordered release of names and addresses from the employer to a labor union attempting to organize the employees. In response to the employer's claim that disclosure of the addresses, obtained with a promise of confidentiality, would violate the employees' right of privacy, the Court responded:

"However, it is clear that no such [privacy] rights are invaded by the *Excelsior* rule *[Excelsior Underwear, Inc,* 156 NLRB 1236 (1966)]. * * * With respect to the employees' 'right to privacy,' as the Supreme Court pointed out in *Martin v City of Struthers,* 319 US 141; 63 S Ct 862; 87 L Ed 1313 (1943), those who do not welcome visits to their homes are free to turn the visitors away and will have the protection of the law in doing so." 266 F Supp 373.

Instead of arguing that the *British Auto Parts* case was wrongly decided, the plaintiffs agree that the disclosure of employee names and addresses to labor unions obtaining at least a 10% showing of interest does not infringe upon the right of privacy, while arguing that disclosure of the very same names and addresses to a labor union with less than a 10% authorization is unconstitutional. We agree with the Court of Appeals that this claim is of questionable validity. If the unconsented-to disclosure of one's name and address invades the "right to be let alone", destroys the sanctity of the home, intrudes into one's private affairs, and reveals a secret and private subject matter that one has a right to keep private, then

it should not matter that the organization to which the information is disclosed has the support of at least 10% of the appropriate bargaining unit. Conversely, if disclosure under the *"Excelsior"* or "10%" rule passes constitutional muster, it is difficult to understand why a 9.9% rule or a rule authorizing disclosure to any legitimate labor organization would not be equally constitutional.

We find the latter view to accord with the weight of authority. In *Webb v City of Shreveport,* 371 So 2d 316 (La App, 1979), the plaintiff union organizers sought the names and addresses of city employees under the Louisiana public records law. A number of employees intervened, alleging the existence of a paramount constitutional right of privacy against disclosure. The court held that the contemplated disclosure violated neither the state nor federal constitutions.

"A person's employment, where he lives, and where he works are exposures which we all must suffer. We have no reasonable expectation of privacy as to our identity or as to where we live or work. Our commuting to and from where we live and work is not done clandestinely and each place provides a facet of our total identity."

See *Milwaukee Board of School Directors v WERC,* 42 Wis 2d 637; 168 NW2d 92 (1969); *Timberlane Regional Education Ass'n v Crompton,* 114 NH 315; 319 A2d 632 (1974). See also *Lamont v Comm'r of Motor Vehicles,* 269 F Supp 880 (SD NY, 1967), holding that the federal right of privacy does not prohibit the State of New York from selling to the highest bidder names and addresses of persons registering automobiles.

We find no infringement of plaintiffs' right to

privacy under either the federal or state constitutions.

In support of their claim for injunctive relief, the plaintiffs argue that disclosure of their names and addresses to the public employee unions would expose them to physical danger from hostile clients; that abusive labor union picketing of employees' homes would result; and that unless the requested injunction is granted, the state could release personal medical information about state employees. The plaintiffs' fear of injury at the hands of the hostile general public is not well taken, since the contemplated disclosure was not to the general public but to a public employee labor organization. The fear of picketing at supervisors' homes is insufficient to justify injunctive relief in that (1) the cited instances of home picketing did not involve the unions scheduled to receive the names and addresses in this case, (2) peaceful picketing at the residences of public officials, however annoying, is entitled to some measure of constitutional protection, see *Carey v Brown,* 447 US 455; 100 S Ct 2286; 65 L Ed 2d 263 (1980), and (3) abusive or threatening picketing is most appropriately controlled by civil and criminal sanctions. The asserted fear that the state will release personal medical information about state employees is simply frivolous; the plaintiffs have alleged no facts to support the notion that such a disclosure is contemplated or has ever occurred.

We recognize that for a few individuals, disclosure of their names, addresses, or other seemingly impersonal information could be extremely harmful. See *United States Dep't of State v Washington Post Co,* 456 US 595; 102 S Ct 1957; 72 L Ed 2d 358 (1982) (confirmation or denial of American citizenship of Iranian officials might result in their exe-

cution); *Ruffalo v Civiletti,* 539 F Supp 949 (WD Mo, 1982) (disclosure of the name and address of the plaintiff's son would violate the confidence of the federal witness protection program). We find particularly appropriate the analysis undertaken in Open Records Decision No. 169, Office of the Attorney General of Texas (1977). Only five out of more than 3,000 public employees were found both to have taken effective action to maintain the secrecy of their addresses, and to have demonstrated "truly exceptional circumstances such as * * * an imminent threat of physical danger as opposed to a generalized and speculative fear of harassment or retribution". Three of the five were police officers, one of whom had a "contract" on his life resulting from a specific criminal investigation. We find no such allegations in this case; these plaintiffs have, therefore, failed to plead facts sufficient to warrant injunctive relief.[17]

## V

The plaintiffs' final argument is that disclosure would violate the Civil Service Commission's authority to regulate conditions of state employment under Const 1963, art 11, § 5. The decision by the defendant Civil Service Commission to disclose the names and addresses cannot and does not infringe upon its own authority. The plaintiffs' attack appears to be aimed not against the discretionary disclosure involved in this case, but against mandatory disclosure under the FOIA. Since it is

[17] Even if the individual plaintiffs could allege sufficient exceptional circumstances to justify nondisclosure, the appropriate remedy would be an injunction limited to those individuals rather than the blanket injunction issued by the trial judge in this case. In practice, it is doubtful that the state would indiscriminately disclose the names and addresses of such persons if those persons requested anonymity and provided substantiation for their position.

unnecessary to decide whether the FOIA requires disclosure in this case, it is similarly unnecessary to decide whether the Legislature unconstitutionally infringed on the authority of the Civil Service Commission by enacting the FOIA.

The decision of the Court of Appeals is affirmed.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, LEVIN, and COLEMAN, JJ., concurred with RYAN, J.

RILEY, J., took no part in the decision of this case.