*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIDGING COMMUNITIES, INC., and
GAMBLE PLUMBING & HEATING, INC.,

        Plaintiffs-Appellants,

v

HARTFORD CASUALTY INSURANCE
COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
March 2, 2023
9:25 a.m.

No. 355955
Wayne Circuit Court
LC No. 19-009860-CB

Before: LETICA, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

This appeal involves liability insurance coverage for transmitting unsolicited facsimile (fax) advertisements in violation of the Telephone Consumer Protection Act (TCPA), 47 USC 227. Plaintiffs, Bridging Communities, Inc. (Bridging) and Gamble Plumbing & Heating, Inc. (Gamble), appeal as of right the trial court's order granting summary disposition in favor of defendant, Hartford Casualty Insurance Company, and denying plaintiffs' cross-motion for summary disposition. On appeal, plaintiffs contend that the trial court erred by holding that defendant had no duty to provide liability coverage under the property damage and personal and advertising injury provisions terms of an insurance policy issued to its insured, Top Flite Financial (Top Flite), for the TCPA violations, and by holding that the exclusion of liability coverage for violation of privacy rights created by federal or state statute precluded coverage under the policy. We affirm.

## I. BACKGROUND

The TCPA prohibits, with several exceptions not relevant here, the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 USC 227(b)(1)(C). The TCPA established a private right of action to recover actual monetary loss or statutory damages of $500 for each violation, as well as treble damages in the event of a knowing or willful violation. 47 USC 227(b)(3).

In March 2006, Top Flite, a provider of residential mortgage loans, hired a broadcasting service to conduct a fax advertising campaign. The broadcasting service did not contact recipients to seek permission before sending Top Flite's advertisement, which 4,271 unique fax numbers received, including those belonging to plaintiffs. Plaintiffs filed a class action against Top Flite in the federal court, alleging violations of the TCPA for sending unsolicited fax advertisements in violation of 47 USC 227(b)(1)(C).[1] Plaintiffs and Top Flite eventually agreed to a settlement of the class action.

In May 2019, the federal district court entered judgment against Top Flite for fax transmissions successfully sent in March 2006. Top Flite created a settlement fund to pay a portion of the judgment, and the remaining portion was to be satisfied through the proceeds of Top Flite's insurance policies. Additionally, as part of the judgment, the district court found that Top Flite "had no intent to injure anyone in this case including the recipients of the fax advertisements" sent in March 2006.

## A. INSURANCE POLICY

Defendant insured Top Flite under a series of commercial business insurance policies. The insurance policy at issue in this case, effective between March 29, 2005, and March 29, 2006, (the Insurance Policy) provided business liability coverage to Top Flite, in part, for "property damage" caused by an "occurrence" during the policy period and " 'personal and advertising injury' caused by an offense arising out of [the insured's] business" during the policy period. "Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy excluded coverage for property damage "expected or intended from the standpoint of the insured." The policy also included a "statutory right to privacy exclusion," which precluded coverage for personal and advertising injury "[a]rising out of the violation of a person's right of privacy created by any state or federal act." However, the statutory right to privacy exclusion did not exclude coverage for "liability for damages that the insured would have in the absence of such state or federal act[.]"

Top Flite filed a claim for coverage under the Insurance Policy for the class-action matter in 2012. Defendant denied coverage to Top Flite and declined to defend or indemnify Top Flite in 2012. Defendant affirmed its denial in 2017.

---

[1] The factual background of the underlying federal class action is described in greater detail in *Bridging Communities, Inc v Top Flite Fin, Inc*, 176 F Supp 3d 725 (ED Mich, 2016), and *Bridging Communities, Inc v Top Flite Fin, Inc*, 843 F3d 1119 (CA 6, 2016).

## B. WAYNE CIRCUIT COURT ACTION

In July 2019, plaintiffs[2] filed a complaint against defendant in the Wayne Circuit Court, seeking declaratory relief under MCR 2.605. Plaintiffs alleged that the Insurance Policy issued to Top Flite by defendant provided coverage for the damages awarded in the underlying federal action and that defendant had a duty to indemnify Top Flite for the unsatisfied portion of the judgment awarded, including the postjudgment interest. Specifically, plaintiffs asserted that the policy provided coverage for "property damage" and "personal advertising injury." Plaintiffs alleged that, as a result of receiving the faxes, Top Flite "injured or destroyed [the recipients'] personal property, including but not limited to fax toner and paper" and "caused them to lose the use of their personal property, including but not limited to the use of their fax machines during the fax transmissions." Plaintiffs also sought personal and advertising injury coverage, asserting that their injuries satisfied the policy's definition of injury arising from publication of written or electronic material that violated a person's right of privacy.

Defendant moved for summary disposition under MCR 2.116(C)(7) (statute of limitations), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact). Defendant contended that plaintiffs' claims were barred under the six-year limitations period prescribed by MCL 600.5807(9) because plaintiffs did not file their complaint until July 2019, more than seven years after defendant denied coverage in 2012. Next, defendant asserted that there was no coverage under the policies. Regarding property damage coverage, defendant argued that there was no "occurrence" because the fax transmissions were not accidental and that the "expected or intended injury" exclusion precluded coverage because the damage was a foreseeable, anticipated, or the expected result of intentional conduct by the insured. Defendant further contended that coverage under the personal and advertising injury provision was precluded by the statutory right to privacy exclusion.

Plaintiffs filed a cross-motion for summary disposition under MCR 2.116(C)(10). Plaintiffs reiterated that coverage was required under the property damage and personal and advertising injury provisions of the Insurance Policy. Plaintiffs further contended that coverage was not barred by the statutory right to privacy exclusion because the TCPA did not create the right to privacy, rather the common-law right to privacy predated the TCPA. Plaintiffs also argued that the statute of limitations did not bar its claims because defendant's duty to indemnify did not arise until Top Flite's liability was determined with the entry of the federal district court order in May 2019.

In response to plaintiffs' cross-motion, defendant reiterated that there was no coverage under the Insurance Policy, and further contended that the trial court should deny the motion because the damages awarded were penal rather than compensatory, and plaintiffs had failed to show that the settlement was reasonable and made in good faith. Defendant also argued that there

---

[2] We note that plaintiffs "stood in the shoes" of Top Flite because Top Flite, as the insured, assigned their right to seek indemnification from defendant, the insurer to plaintiffs. See *Coventry Parkhomes Condo Ass'n v Fannie Mae,* 298 Mich App 252, 256-257; 827 NW2d 379 (2012).

was no common-law privacy right to be free from unwanted advertisements and that the statutory right of privacy exclusion precluded coverage.

The court granted defendant's motion for summary disposition, but it denied defendant's motion under MCR 2.116(C)(7).[3]  The court also denied plaintiffs' motion for summary disposition.

In addressing property damage coverage, the court addressed whether the exclusion for expected or intended injury applied.  Noting both parties' reliance on unpublished decisions of this Court, the trial court found that there was no indication "that a third party was responsible for the faxing of the advertisements, such that Top Flite did not know or expect that its advertisements were being sent to unwilling recipients."  Observing that plaintiffs did not argue that Top Flite accidentally transmitted the fax advertisements, but only that it did not intend to cause injury, the court concluded that the exclusion for expected or intended injury applied because "Top Flite's intentional action of sending the facsimiles created a risk that the recipients would be damaged by the use of their fax machines, paper, and ink or toner."

Addressing personal and advertising injury coverage, the trial court ruled that Top Flite's unsolicited transmission of fax advertisements constituted an advertising injury, as defined in the policy.  However, noting that plaintiffs' claims were brought under the TCPA, that all damages were awarded under the TCPA, and that Michigan caselaw does not support a common-law privacy right under the facts of the case, the court concluded that the statutory right of privacy exclusion applied and precluded coverage for all damages arising out of the unsolicited faxes.

This appeal followed.

## II.  STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo.  *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).  The trial court did not specify the subrule under which summary disposition was granted.  However, "[b]ecause the trial court considered documentary evidence in granting the motion for summary disposition, we review the trial court's order as one granted pursuant to MCR 2.116(C)(10)."  *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 61; 903 NW2d 197 (2017).  A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint.  *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).  The court considers the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party.  *Id*.  "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."  *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).  "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ."  *Id.*

---

[3] On appeal, the parties do not argue that the trial court erred by denying defendant's motion under MCR 2.116(C)(7).

The proper interpretation and application of an insurance policy and issues of statutory construction are reviewed de novo. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 528; 620 NW2d 840 (2001). Whether the policy language is ambiguous is a question of law that is also reviewed de novo. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

### III. PERSONAL AND ADVERTISING INJURY COVERAGE

We first address whether the trial court erred by concluding that the statutory right of privacy exclusion precluded coverage. We conclude that it did not.

Insurance policies are interpreted like any other contract. *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 291-292; 778 NW2d 275 (2009). The policy is read as a whole "to determine and effectuate the parties' intent," and "[t]he terms of the contract are accorded their plain and ordinary meaning." *Id*. at 292. If the contractual language is unambiguous, the contract will be enforced as written. *Meemic Ins Co v Fortson*, 506 Mich 287, 297; 954 NW2d 115 (2020). "[A]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Id*. (quotation marks and citation omitted).

"A two-step analysis is used when interpreting an insurance policy: first, does the general insurance policy provide coverage for the occurrence, and second, if coverage exists, does an exclusion negate the coverage?" *Auto Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015). The insured bears the burden of establishing that the claim "falls within the terms of the policy," while the insurer bears the burden of establishing that coverage is negated by an exclusion. *Id*. Exclusionary clauses are strictly construed in favor of the insured. *Id*. However, "clear and specific exclusions will be enforced as written so that the insurance company is not held liable for a risk it did not assume." *Id*. at 146-147.

In this case, plaintiffs sought indemnification for a portion of the judgment attributable to the unsolicited fax advertisements sent in March 2006 by Top Flite, in violation of the TCPA, 47 USC 227(b)(1)(C). As discussed, the policy in effect during March 2006 provided liability coverage to Top Flite for " 'personal and advertising injury' caused by an offense arising out of your business . . . ." The policy defined "personal and advertising injury" in part to mean "injury, including consequential 'bodily injury' arising out of . . . [o]ral, written, or electronic publication of material that violates a person's right of privacy[.]" The "statutory right of privacy" exclusion excluded coverage for personal and advertising injury "[a]rising out of the violation of a person's right of privacy created by any state or federal act," but the exclusion did not apply to "liability for damages that the insured would have in the absence of such state or federal act[.]" The policy did not define "right of privacy."

The trial court observed that plaintiffs' federal "claims against Top Flite were brought under the TCPA, a federal statute and all damages were awarded under the statutory damage provision of the TCPA." The trial court recognized that the "statutory right to privacy" exclusion did not apply to liability for damages that Top Flite would have in the absence of the TCPA, and held that the exception to the exclusion did not apply because "there is no common law cause of action in Michigan for invasion of privacy arising out of the unsolicited distribution of advertising facsimiles such as the ones sent in this case."

The TCPA has engendered a considerable body of caselaw in state and federal courts addressing whether an insurer has a duty to defend or indemnify an insured for the transmission of unsolicited fax advertisements. See generally *Insurance Coverage for Claims of Violations of the Telephone Consumer Protection Act (47 USCA § 227)*, 3 ALR 6th 625. Although no published Michigan appellate decision has addressed whether a violation of the TCPA is covered as property damage or personal and advertising injury, the parties cite myriad published and unpublished decisions of various state and federal courts supporting their respective positions.[4]

Plaintiffs argue that the statutory right of privacy exclusion did not bar personal and advertising injury liability coverage.[5] Plaintiffs assert that "the TCPA provides a remedy for specific forms of intrusions into seclusion, which is a privacy right that long preexisted the TCPA," and argues that the TCPA did not create the privacy right, but rather it only enhanced the remedy. Plaintiffs assert that the right to be free from intrusion into seclusion, which they define as "the right to be left alone," is a common-law right "deeply embedded in Michigan law."

Our Michigan Supreme Court explained Michigan's common-law right of privacy in *Tobin v Civil Service Comm*, 416 Mich 661, 672; 331 NW2d 184 (1982):

> The common-law right of privacy is said to protect against four types of invasion of privacy.
>
> 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
>
> 2. Public disclosure of embarrassing private facts about the plaintiff.
>
> 3. Publicity which places the plaintiff in a false light in the public eye.
>
> 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness. [Quotation marks and citations omitted.]

To succeed on a claim of intrusion upon seclusion, a party must establish three elements: "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Dalley v Dykema Gossett PLLC*, 287 Mich App 296,

---

[4] "Although this Court is not bound by the decisions of federal courts or courts of other states, we may consider them persuasive." *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 496 n 2; 892 NW2d 467 (2016).

[5] We note that on appeal, defendant argues that the trial court should have concluded that plaintiffs did not allege an "advertising injury." However, defendant repeatedly concedes that the TCPA creates a privacy right, in addition to creating an enforcement mechanism. Because the transmission of the fax advertisements was clearly a written publication, and plaintiffs alleged that the fax advertisement violated their right to privacy in their complaints, the trial court correctly concluded that plaintiffs alleged an advertising injury covered by the policy.

306; 788 NW2d 679 (2010) (quotation marks and citation omitted). Plaintiffs have not alleged any of the elements to establish such a claim. Nor have plaintiffs provided any examples of a cause of action that would, under the facts of this case, give rise to liability for damages that Top Flite would have in the absence of the TCPA.

In concluding that there was no common-law cause of action under the facts of the instant case, the trial court relied on *Tobin*, 416 Mich at 661, and *Bradshaw v Mich Nat'l Bank*, 39 Mich App 354; 197 NW2d 531 (1972). Plaintiffs argue that the *Bradshaw* Court "expressly observed that the common law privacy rights recognized in Michigan law include the right to be free from intrusion into seclusion," which applies to "the receipt of an unsolicited facsimile" in the instant case We disagree.

In *Bradshaw*, 39 Mich App at 355, the defendant issued a credit card in the name of plaintiff, but mailed it to the plaintiff's former address, resulting in a third party using the card to make numerous purchases. The plaintiff alleged an invasion of privacy claim, among other theories, asserting that he was injured by the acts of the defendant. *Id.* This Court explained that "[i]ntrusion is based on the invasion of something that a person has a right to keep private. However, this intrusion must be by some means that a reasonable man would find objectionable." *Id.* at 356 (citation omitted). This Court rejected the plaintiff's invasion of privacy claim, explicitly holding that "the unsolicited mailing of a credit card is not an invasion of privacy." *Id.*

In *Tobin*, 416 Mich at 663-664, the plaintiffs sought to enjoin disclosure of a list of names and addresses of state civil service employees to a labor organization in response to a request under the Freedom of Information Act, MCL 15.231 *et seq.*, relying on common-law and constitutional privacy rights, *id.* at 671-672. Our Supreme Court held that disclosure of the list did not violate the common-law right of privacy, and explained, "Certainly the expectation that the person listed will be subjected to unsolicited messages from the public employee unions is insufficient to create an actionable invasion of privacy, since the mailing of unsolicited messages not amounting to harassment is not actionable." *Id.* at 675, citing *Bradshaw*, 39 Mich App at 354. Our Supreme Court also rejected the plaintiffs' constitutional right to privacy claims. *Tobin*, 416 Mich at 677-678.

In the instant case, plaintiffs have failed to cite any cases in which a court has found that the receipt of an unsolicited fax gives rise to a cause of action for damages for invasion of a common-law right of privacy outside of the TCPA. Moreover, plaintiffs did not plead any common-law violation of privacy claim in their class-action complaint in the federal district court or in the circuit court. Nevertheless, plaintiffs assert that even if not pleaded in the complaint, the existence of a common-law right to privacy and the potential for a claim for violation of that right is sufficient to avoid the exclusion. However, plaintiffs have failed to establish the existence of such a claim.

Plaintiffs also argue that the statutory right to privacy exclusion was unclear and ambiguous because a subsequent policy explicitly excluded coverage for injury that violated or allegedly violated the TCPA, and that subsequent policy language supports the inference that defendant did not intend to exclude coverage for violations of the TCPA in the earlier policy. We disagree.

A provision of an insurance policy "is ambiguous if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005). The statutory right to privacy exclusion in the Insurance Policy does not conflict with any other provision and is not susceptible to more than one meaning. Therefore, the statutory right to privacy exclusion is not ambiguous.

Plaintiff has failed to establish that the exception to the statutory right to privacy exclusion applied, entitling Top Flite to coverage under the personal and advertising injury provision. In other words, coverage under the personal and advertising injury provision was barred by the statutory right to privacy exclusion. Further, because plaintiffs only claimed violations under the TCPA in the federal action, Top Flite would not have been liable in the absence of the TCPA. Therefore, the trial court did not err by concluding that there was no coverage under the personal and advertising injury provision of the Insurance Policy.

## IV. PROPERTY DAMAGE COVERAGE

Plaintiffs also argue that the trial court erred by excluding coverage under the property damage provisions of the policy. We disagree.

The initial inquiry is whether defendant's policy provided coverage under the property damage provisions. As the parties recognize, this determination hinges on whether the property damage alleged by plaintiffs was caused by an "occurrence," which the policy defines as an "accident." In this case, the policy provided that coverage did not apply to property damage "expected or intended from the standpoint of the insured." Relying on *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 114, 115-116; 595 NW2d 832 (1999), the trial court concluded:

> Top Flite's intentional action of sending the facsimiles created a risk that the recipients would be damaged by the use of their fax machines, paper, and ink or toner. Accordingly, the Expected or Intended Injury Exclusion applies and there is no coverage for Top Flite's distribution of the unsolicited facsimiles under the property damage provision of the insurance policy.

Although the trial court did not explicitly state whether the property damage was caused by an "occurrence," it ruled that the expected or intended injury exclusion applied to preclude coverage. See *Seils*, 310 Mich App at 146. Nevertheless, by concluding that the exclusion barred coverage under the Insurance Policy, the trial court implicitly determined that the transmission of the fax advertisements qualified as an "occurrence." See *id.*

## A. OCCURRENCE

Our Supreme Court addressed an insurer's duty to indemnify under policy language nearly identical with the Insurance Policy in the instant case in *Masters*, 460 Mich at 105. In *Masters*, the insureds intentionally set fire to their clothing store, planning to collect casualty insurance for the destruction of their inventory. *Id.* at 107-108. The fire also damaged neighboring businesses, and the owners and their insurers sought compensation from the owners of the clothing store,

whose insurer then filed an action for declaratory judgment, asserting that it had no duty to defend or indemnify. *Id*.

Observing that the policy did not define "accident," the Supreme Court, applying the term's "commonly used meaning," held that "an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Id*. at 114 (quotation marks and citations omitted). The Court also held that whether an event was an "accident" must be evaluated from the standpoint of the insured, and that "the appropriate focus of the term 'accident' must be on both the injury-causing *act* or *event* and its relation to the resulting property damage or personal injury." *Id*. at 114-115 (quotation marks and citation omitted). However, the insured's actions do not need to be unintentional in order for an act to "constitute an 'accident' and therefore an 'occurrence.' " *Id*. at 115 (citation omitted). "[W]hen an insured's intentional actions create a direct risk of harm, there can be no liability coverage for *any* resulting damage or injury, despite the lack of an actual intent to damage or injure." *Id*. at 116 (quotation marks and citation omitted).

The *Masters* Court concluded that an intentional act of the insured caused the fire and that the insured intended to cause property damage. *Masters*, 460 Mich at 116. The Court held that the insureds' act was not an accident, there was no "occurrence" for purposes of coverage, and it was "irrelevant whether the harm that resulted, damage to the clothing store and surrounding businesses, was different from or exceeded the harm intended, minor damage to the clothing inventory." *Id*.

Three years later, in *Allstate Ins Co v McCarn*, 466 Mich 277, 278-279; 645 NW2d 20 (2002) our Supreme Court revisited a similar indemnification issue in a case in which a 16-year-old was shot and killed by another minor, the insureds' grandson, who believed the gun was unloaded. The trial court entered a declaratory judgment in favor of the insured, holding that the events constituted an "occurrence" and that the minor's conduct was not intentional or criminal within the meaning of the insurer's policy. This Court reversed, concluding that the minor's conduct created a direct risk of harm, precluding coverage. Our Supreme Court disagreed, holding that the shooting death was accidental and constituted an "occurrence," thus giving rise to coverage under the policy. *Id*. at 291.

Summarizing the holding of *Masters*, the Court explained:

What this essentially boils down to is that, if both the act and the consequences were intended by the insured, the act does not constitute an accident. On the other hand, if the act was intended by the insured, but the consequences were not, the act does constitute an accident, unless the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured. [*Id*. at 282-283.]

The Court explained that "to avoid coverage, the consequence of the intended act, which created a direct risk of harm, reasonably should have been expected by the insured," and that the *Masters* test is not an objective one. *Id*. at 283, 284. Rather, "the inquiry is entirely subjective—did the insured intentionally create a direct risk of harm?" *Id*. at 284. The Court concluded that the death was an "accident," and therefore an "occurrence," because the minor believed the gun was

unloaded, did not intend to fire a loaded weapon, and no injury would have been caused by the minor's "intended act of pulling the trigger of an unloaded gun." *Id.* at 285.

Resolution of the instant case is governed by the principles stated in *Masters* and *McCarn.* Top Flite's intent is a primary consideration. The parties do not dispute that Top Flite intended the transmission of fax advertisements. The natural consequence of such intentional act, obviously, is the use of the recipients' fax machine and supplies. The intentional acts in this case cannot be construed as accidental, and therefore, do not constitute occurrences covered under the policy.

## B. EXCLUSION

Even if Top Flite's conduct qualified as an "occurrence" under the policy, coverage is precluded by an exclusionary clause in the policy. Plaintiffs cannot establish that their claims fall within the terms of the policy and defendant has established that coverage is excluded under the terms of the policy. See *Seils*, 310 Mich App at 146-147. The policy excluded coverage for property damage that was "expected or intended from the standpoint of the insured." The uncontested facts in this case establish that plaintiffs intentionally sent commercial solicitations via fax machines. Plaintiffs intended the recipients' machines to receive the message, print the message, and hoped that the recipients would reply to the message by engaging in a profitable commercial transaction with plaintiffs. Plaintiffs did nothing accidentally or unintentionally. Because the events giving rise to this action were in their entirety the specific and intentional result of plaintiffs' specific and intentional business strategy and plan, the events could not and do not meet the definition of an "occurrence" covered under the policy. "[W]hen an insured's intentional actions create a direct risk of harm, there can be no liability coverage for *any* resulting damage or injury, despite the lack of an actual intent to damage or injure." *Masters*, 460 Mich at 116. Plaintiffs' acts and the consequences that resulted were intended by the insured, and therefore, the acts were not accidents and the consequences of their intended acts created a direct risk of harm that the insureds should have expected, negating plaintiffs' claim for coverage for any qualifying occurrence. See *McCarn*, 466 Mich at 228-283.

Affirmed.

/s/ Anica Letica
/s/ James Robert Redford
/s/ Michelle M. Rick