138 N.J. Super. 357 (1976)
351 A.2d 30
TRENTON TIMES CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, QUALIFIED TO DO BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOARD OF EDUCATION OF THE CITY OF TRENTON, COUNTY OF MERCER, A NEW JERSEY MUNICIPAL CORPORATION, AND DR. SALVADOR R. FLORES, ETC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1975.
Decided January 8, 1976.
*359 Before Judges MATTHEWS, LORA and MORGAN.
Mr. Michael A. Andrew, Jr. argued the cause for appellant Board of Education of the City of Trenton (Messrs. Merlino & Andrew, attorneys).
Mr. Daniel J. Grazino, Jr. argued the cause for appellant Dr. Salvador R. Flores (Messrs. Pellettieri and Rabstein, attorneys).
Mr. Thomas C. Jamieson, Jr. argued the cause for respondent (Messrs. Jamieson, McCardell, Moore, Peskin & Spicer, attorneys; Mr. Richard A. Ragsdale on the brief).
PER CURIAM.
Plaintiff, publisher of newspapers sold in the Trenton area of New Jersey and Pennsylvania, filed a complaint in lieu of prerogative writs in which it sought an order, pursuant to N.J.S.A. 47:1A-1 et seq. (the Right to Know Law), directing defendant Board of Education of Trenton to permit plaintiff to inspect and copy a letter addressed to defendant Dr. Salvador R. Flores. Plaintiff's motion for summary judgment was granted and defendants appeal. The order has been stayed pending this appeal.
On October 3, 1972 defendant board of education and defendant Flores entered into a contract of employment wherein Flores was employed as superintendent of the public schools in the City of Trenton for a term expiring on June 30, 1975. At a public meeting held April 17, 1975 the board publicly announced that defendant Flores' contract would not be renewed and directed that notice of nonrenewal be given Flores prior to April 30, 1975, in accordance with N.J.S.A. 18A:27-10.
This notice of nonrenewal was sent under date of April 25, 1975 but included therein an unsolicited evaluation of *360 Dr. Flores' performance as superintendent which, according to the board, was provided in the interests of "elemental fairness." Because the statement was regarded as confidential, it was not placed in Flores' personnel file or "in any other file under the control, directly or indirectly, of the Board of Education of the City of Trenton." This court received a copy thereof during oral argument from the board's attorney.
On April 28, 1975 a representative of plaintiff made demand upon the secretary of defendant board for a copy of the letter and was advised that a copy was not available. Defendant Flores similarly refused to supply plaintiff with a copy of the letter.
In granting plaintiff's motion for summary judgment requiring defendant to permit plaintiff to inspect and copy the letter, the trial judge determined that the letter was a public document because it contained the notice of nonrenewal of employment required by N.J.S.A. 18A:27-10, and refused to excise the evaluative portion thereof before submission to plaintiff. With respect to defendant Flores' assertion of his right to privacy as a bar to disclosure of the contents of the letter, the trial judge took the view that the Legislature had not provided the court with the discretion to balance an individual's right to privacy with the public's right to know. Flores' request for suppression was accordingly denied.
N.J.S.A. 47:1A-2, commonly known as the Right to Know Law, defines public records as
* * * all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission, or official of the State * * * [Emphasis supplied]
Additional definitional material is found in N.J.S.A. 47:3-16 (The Destruction of Public Records Law), which must be read in pari materia with N.J.S.A. 47:1A-2. Citizens for Better Ed. v. Camden Bd. of Ed., 124 N.J. Super. *361 523, 528 (App. Div. 1973). N.J.S.A. 47:3-16 provides, in pertinent part:
* * * the words "public records" mean any paper, written or printed book, document or drawing * * * which has been made or is required by law to be received for filing, indexing, or reproducing by any officer, commission, agency or authority of the State or of any political subdivision thereof, or that has been received by any such officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, in connection with the transaction of public business and has been retained by such recipient or its successor as evidence of its activities or because of the information contained therein. [Emphasis supplied]
Plaintiff contends that the letter in question is a public record within the foregoing definitions because the notice of nonrenewal contained therein was required to be sent Flores by N.J.S.A. 18A:27-10, which requires defendant board to give to each nontenured teaching staff member a written offer of a contract for employment or a written notice that such employment will not be offered. Failure to give notice of termination, i.e., notice that employment will not be offered, is deemed an offer of employment for the succeeding year. N.J.S.A. 18A:27-11. Since the board intended to terminate Flores' employment, a notice to that effect was, therefore, required by law.
While the notice of nonrenewal was required by law in these circumstances, that requirement does not extend to the controversial evaluation material included in the letter containing the nonrenewal notice. No statute requires an evaluation of an employee's performance to be given in connection with a notice of nonrenewal in the absence of the employee's request therefor. Donaldson v. No. Wildwood Bd. of Ed., 65 N.J. 236 (1974), simply requires that a board of education honor a teacher's request for reasons for termination. Here Flores never requested any reasons for nonrenewal or any evaluation of his performance. The proffered evaluation was purely gratuitous.
*362 Nor was the letter "received" by the board "in connection with the transaction of public business." It was written by the board for the information of Flores, and was not retained "as evidence of its activities or because of the information contained therein." The letter was not placed in Flores' personnel file or indeed retained by the board itself. At all times it was regarded as personal to Flores, confidential and of a sensitive nature.
Even were the evaluative portion of the letter in question to be regarded as a public document within the foregoing definitions, nonetheless, the effect of two Executive Orders, Nos. 9 and 11, is to prohibit its disclosure. N.J.S.A. 47:1A-2 authorizes the Executive to require nondisclosure of certain classifications of documents in the public interest. Executive Order No. 9, effective October 1963, provided that all personnel records be not deemed public records. The reason for this exception, as set forth in Executive Order No. 9, was the need to balance the right of the public to know against the risk of unintentional harm or injustice to individuals that might be occasioned by the indiscriminate exposure of certain records containing data of a sensitive or personal nature.
The scope of Executive Order No. 9 was, however, thereafter limited by Executive Order No. 11, effective November 15, 1974, which permitted disclosure of only the following data contained in personnel files:
[A]n individual's name, title, position, salary, payroll record, length of service in the instrumentality of government and in the government, date of separation from government service and the reason therefor; and the amount and type of pension he is receiving. [Emphasis supplied]
The reason given in Executive Order No. 11 for restricting the scope of the exemption of personnel records from public disclosure previously granted by Executive Order No. 9 was that "disclosure of the name, title and position of pension receiving pensions and of the type and amount of pension being received is an insignificant invasion of privacy outweighed *363 by the public's right to know who it is employing, what jobs they are filling and the identities of those receiving government pensions."
Clearly, both executive orders acknowledge the private nature of much of the material contained in personnel files and both afford protection thereto. No. 11, however, intended only to release such "insignificant" data contained in such files which would not unduly trample on a government employee's legitimate claim to privacy. Thus, all medical and psychological information concerning an employee receives categorical protection from disclosure.
We do not regard that portion of Executive Order No. 11 which provides for disclosure of the reasons for an employee's termination of his employment with government as encompassing all evaluative material contained in the employee's file justifying his nonretention in government service Disclosure of such information is not an "insignificant invasion of privacy" and was not, in our view, intended by the quoted portion of that order. The reason for Flores' nonretention was the expiration of his contract implemented by the notice of nonrenewal  information already in the possession of plaintiff because announced at a public meeting. The detailed evaluation of plaintiff's performance provided by the board in the interests of "elemental fairness" and for Flores' own information was not the kind of material Executive Order No. 11 intended for public consumption.
A contrary holding would be, in our view, open to serious objection and counterproductive to several important policy objectives. Were all personnel evaluations known to be subject to public disclosure, candor in making them might well be compromised. Exercise of the right, afforded by Donaldson, supra, to an employee whose contract was not being renewed, to an explanation therefor might be inhibited by the employee's knowledge that any such explanation would fall into the public domain. In those circumstances an employee might well think twice before exercising the right afforded him by Donaldson.
*364 A similar interpretation of N.J.S.A. 47:1A-1 et seq., as implemented by Executive Order No. 11, may be found in a report by the Attorney General, entitled "New Jersey's Right to Know," submitted to Governor Cahill in January 1974. The following excerpt is taken from the comment to § 1-15, "Proposed Public Information Act of 1974," which deals with an individual's personnel record:
Personnel records, within the meaning of this section, include employees' performance ratings. The policy to keep performance ratings confidential has been adopted: first, to protect the right of privacy of the government employee; second, because the evaluations are subjective opinions of the performance of the employee that vary with the person giving the rating; third, public disclosure would impede receiving candid evaluations; and fourth, a supervisor could use the public nature of these ratings as a vindictive mechanism against employees he disliked. The lack of objective criteria, the potential for vindictiveness, the lack of an opportunity for the employee to rebut statements made in the rating, and a substantial potential for abuse leads to the conclusion that these ratings should be kept confidential. Furthermore, there are sufficient internal controls provided to give reasonable assurance that an employee with poor performance ratings will not progress in government service.
Our conclusions with respect to plaintiff's right to have disclosure of the letter in question under N.J.S.A. 47:1A-1 et seq. also answer plaintiff's claim based on the common law right to know, as well as Dr. Flores' defense that disclosure of the letter would violate his right of privacy.
Reversed.