JOSEPH CONNOLLY & another [1] vs. RANDOLPH BROMERY
& others. [2]

Hampshire.  February 18, 1983. — April 14, 1983.

Present: GREANEY, KASS, & WARNER, JJ.

*Public Record.*

Certain written evaluations of faculty and courses made by students at
the University of Massachusetts at Amherst were personnel files or in-
formation within the meaning of G. L. c. 4, § 7, Twenty-sixth (c),
and thus were exempt from mandatory disclosure as public records.
[662-664]

CIVIL ACTION commenced in the Superior Court on June
12, 1978.

The case was heard by *Murphy, J.,* on motions for sum-
mary judgment.

*Mark Eckstein (Charles J. DiMare* with him) for the
plaintiffs.

*William E. Searson, III (Sidney Myers* with him) for the
defendants.

KASS, J.  Connolly and Kropp, the plaintiffs, brought this
action to compel disclosure, as public records, of written
evaluations made by students of the performance of faculty
at the University of Massachusetts in Amherst (the Universi-
ty).

Much that the plaintiffs have argued in this case has since
been disposed of, adversely to them, in *Globe Newspaper*

---

[1] Steven Kropp.

[2] Bromery is the chancellor of the Amherst campus of the University of
Massachusetts.  There are sixty-eight other named defendants, all of
whom hold academic office at the University of Massachusetts in
Amherst.

*Co.* v. *Boston Retirement Bd.*, 388 Mass. 427 (1983). It was there decided (at 438) that personnel and medical files or information were "absolutely exempt from disclosure" under G. L. c. 66, § 10 (providing for disclosure of public records), read together with G. L. c. 4, § 7, Twenty-sixth, as amended by St. 1977, c. 691, § 1. Clause Twenty-sixth defines how the term "public record" shall be construed when it appears in the General Laws. The particular exempting provision (one of nine in clause Twenty-sixth) here applicable reads in its entirety:

> "(c) personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy."

The *Globe* opinion held that the language following the semicolon is an independent clause, so that the personal privacy test there provided for does not apply to "personnel and medical files or information." This was a conclusion founded not only in punctuation, but in statutory context and legislative history as well. *Id.* at 432-434.

It is sufficient to resolve the case now before us if we determine that the records to which the plaintiffs desire access are "personnel files or information," and, as such, exempt from inspection.[3] A Superior Court judge decided that they were and allowed the defendants' motion for summary judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), Judgment entered for the defendants and the plaintiffs appealed. We affirm.

When they initiated this action Connolly and Kropp were students at the University and members of the Student Senate Academic Affairs Committee, the publisher of a course and teacher evaluation guide. On the basis of

---

[3] The records in the *Globe* case were exempt because they were "medical files or information."

pleadings and extensive discovery, the motion judge was able to find it undisputed that the materials which the plaintiffs wished to examine consisted of evaluations of teachers and courses which faculty, as a matter of University policy, were required to solicit from students. These evaluations varied in form: narrative-style opinions of teacher and course; number ratings from one to five or one to ten as to various elements of the pedagogical process;[4] and questionnaires calling for responses which a computer could score.

Responses to the various evaluation inquiries were to guide the instructor toward self-improvement[5] and to assist the University administrations in making personnel decisions such as reappointment, promotion, merit raises and tenure. The record contains various memoranda from the University's vice-chancellor for academic affairs to deans, directors, department heads, chairmen, and chairmen of departmental and school personnel committees which consider how the teaching evaluation data might be disseminated (e.g., in synopsis form). No procedure for publication of the information on a University-wide basis was ever implemented and any tentative policy so to do has been abandoned. Nine academic departments permitted faculty members to retain the evaluation data as their own property. Six departments, not named as defendants, voluntarily released the evaluation information.

While considering a similar question under analogous provisions of Federal law,[6] the Supreme Court described

[4] E.g., knowledge of subject, effectiveness of teaching, responsiveness to students' particular interests, availability outside of classroom, enthusiasm, fairness of the examinations.

[5] It is equally likely that the returns might induce profound depression or euphoria on the part of the subjects, depending on the degree of scorn or praise served up by the student critics.

[6] The Freedom of Information Act, 5 U.S.C. § 552(b)(6) (1976). Significant differences between the punctuation of the Federal and State provisions were discussed in *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. at 432-434. In consequence, administrators and courts

"evaluations of [a person's] work performance" as matter which ordinarily would appear in personnel files, together with academic records, where the subject was born, the names of his parents and where he lived from time to time. *Department of the Air Force* v. *Rose,* 425 U.S. 352, 377 (1976).

In other cases arising under the Freedom of Information Act courts have determined that evaluations were a component of personnel records and should be so regarded in judging whether they were subject to disclosure. *Vaughn* v. *Rosen,* 383 F. Supp. 1049, 1055 (D.D.C. 1974), aff'd, 523 F.2d 1136 (D.C. Cir. 1975). *Columbia Packing Co.* v. *United States Dept. of Agriculture,* 417 F. Supp. 651, 655 (D. Mass. 1976), aff'd, 563 F.2d 495 (1st Cir. 1977). *Metropolitan Life Ins. Co.* v. *Usery,* 426 F. Supp. 150, 167 (D.D.C. 1976). *Associated Dry Goods Corp.* v. *NLRB,* 455 F. Supp. 802, 815 (S.D. N.Y. 1978) (material such as employment applications, educational attainments, disciplinary records, payroll records, work evaluations, absences and excuses for absences characterized as the essence of a personnel file). *Celmins* v. *United States Dept. of the Treasury,* 457 F. Supp. 13, 15-17 (D.D.C. 1977).

Raw data appraising the job performance of individuals — which is what we are dealing with here — is particularly personal and volatile. In light of the cases discussed, we have no difficulty concluding that the student evaluations of teachers are personnel information and, as such, outside the category of a public record. Studies which digest raw data and which deal with departmental, rather than individual, performance might fall into a different category.

We are not persuaded to a different opinion because it was at one time contemplated by the University that results of the questionnaires be made available to students in *sum-*

considering requests under Federal law for disclosure of information from personnel files must engage in a balancing test between the public interest in disclosure and the right to privacy of the individual who is the subject of the personnel file. Under G. L. c. 4, § 7, Twenty-sixth (*c*), and *Globe,* no such balancing test is required in Massachusetts.

*mary form,* that some departments made no use of the questionnaires for evaluation purposes, and that some faculty members released evaluations made of them by their students. None of those circumstances changes the nature of the file fodder sought to be obtained. To the extent that there was partial (and not significant in percentage terms) disclosure by certain teachers, this does not vitiate the general policy which the University has chosen to apply to the personnel material. *Bougas* v. *Chief of Police of Lexington,* 371 Mass. 59, 63 (1976).

*Judgment affirmed.*