BRADLEY v SARANAC COMMUNITY SCHOOLS
BOARD OF EDUCATION

LANSING ASSOCIATION OF SCHOOL ADMINISTRATORS v
LANSING SCHOOL DISTRICT BOARD OF EDUCATION

Docket Nos. 106020, 106070. Argued March 5, 1997 (Calendar Nos. 11-12).
Decided July 22, 1997.

Christine E. Bradley brought an action in the Ionia Circuit Court
against the Saranac Community Schools Board of Education and
the Saranac Community School District, seeking to enjoin the
defendants from complying with a request under the Freedom of
Information Act, MCL 15.231; MSA 4.1801(1), by the father of one
of her students for copies of her personnel file, contending that the
disclosure was exempt under subsections 13(1)(a) and (n) of the
FOIA. The court, James K. Nichols, J., following an in-camera inspec-
tion, ruled that a redacted file should be released.

The Lansing Association of School Administrators brought an action
in the Ingham Circuit Court against the Lansing School District
Board of Education and others, seeking to enjoin the defendants
from complying with an FOIA request by the Parents Support Net-
work for copies of written performance evaluations of nine princi-
pals, alleging that the documents were exempt from disclosure
under subsections 13(1)(a), (m) and (n) of the FOIA and certain
administrative protections. The court, Lawrence M. Glazer, J., ruled
in favor of the district.

The cases were consolidated in the Court of Appeals. The Court,
McDONALD, P.J., and MARKEY, J. (R. I. COOPER, J., not participating),
affirmed in an opinion per curiam (Docket Nos. 163316, 168371).
The plaintiffs appeal.

In an opinion by Justice BRICKLEY, joined by Chief Justice
MALLETT, and Justices RILEY and WEAVER, the Supreme Court *held*:

The Freedom of Information Act compels the disclosure of the
appellants' personnel records. Because the requested information is
related to the appellants' public employment, their personnel
records are not within the privacy exemption of subsection
13(1)(a), nor are they exempt under subsections 13(1)(m) and (n)
because the appellants do not have standing to raise the
exemption.

1. The Michigan Freedom of Information Act provides for full disclosure of public records in the possession of a public body unless the records are exempt under § 13. For the subsection 13(1)(a) exemption to apply, the information must be of a personal nature, and its disclosure must be a clearly unwarranted invasion of privacy. Information is of a personal nature if it reveals intimate or embarrassing details of an individual's private life. The standard is evaluated in terms of the customs, mores, or ordinary views of the community. In these cases, the requested information consists solely of performance appraisals, disciplinary actions, and complaints relating to the plaintiffs' accomplishments in their public jobs. Because it does not disclose intimate or embarrassing details of the plaintiffs' private lives, it does not satisfy the personal-nature element of the privacy exemption.

2. Subsection 13(1)(n) does not apply because the complaints from parents contained in the records are not communications and notes within a public body or between public bodies, and the appellants lack standing to assert this exemption. The proper party to raise the exemption is the school district.

3. Likewise, subsection 13(1)(m) does not apply. The Legislature's use of the term "counseling" in subsection 13(1)(m) does not appear to include an employment relationship. The apparent purpose of this exemption is to prevent the disclosure of a person's identity through the release of medical, counseling, or psychological records. In this case, the parties seeking the plaintiffs' records requested them by name, not by job title. Thus, the exemption would not apply even if the plaintiffs' records were "counseling evaluations" because the plaintiffs' identities were already known.

4. Because the Legislature modeled its FOIA on the federal version, it must be concluded that by not adopting the specific language of the federal privacy exemption the Legislature intended that the personnel records of non-law enforcement public employees be available to the public. Making such documents publicly available seems more likely to foster candid, accurate, and conscientious evaluations than suppressing them. The person performing the evaluations will be aware that the documents being prepared may be disclosed to the public, thus subjecting the evaluator, as well as the employee being evaluated, to public scrutiny. The knowledge that their efforts may be brought before the public at some distant date may encourage those who evaluate their peers to accurately reflect the achievements, or lack thereof, of those being evaluated.

5. A common-law invasion of privacy would not prevent the disclosure of the documents requested. The act specifies that only

clearly unwarranted invasions of privacy are exempted. By using a higher standard, the Legislature has permitted disclosures of public records that are invasions of privacy, as long as that invasion is not clearly unwarranted. Therefore, an invasion of privacy that is less than clearly unwarranted cannot stand as an obstacle to disclosure. Irrespective of whether there was a common-law claim, the FOIA governs the resolution of the case.

6. Although in LASA the collective bargaining agreement provides that evaluations of school administrators would be reviewed only by appropriate district administrative personnel, the school district cannot eliminate its statutory obligations to the public merely by contracting to do so with the plaintiff. The FOIA requires disclosure of all public records not within an exemption, and no exemption provides for a public body to bargain away the requirements of the FOIA.

7. Redaction of documents is appropriate under the FOIA whenever disclosure is discretionary. A public body is permitted to redact any information that falls within an exemption of the FOIA. However, in *Bradley*, the redactions were entirely at cross purposes with the FOIA, and so extensive that their informative value was nil.

Affirmed in part, reversed in part, and remanded for further proceedings.

Justice BOYLE, joined by Justices CAVANAGH and KELLY, concurring in part and dissenting in part, stated that performance evaluations, disciplinary actions, and complaints are information of a personal nature.

After concluding that the requested information is personal, the next step is to determine whether disclosure of the material would constitute a clearly unwarranted invasion of the plaintiffs' privacy. Some invasion of privacy inevitably will occur upon disclosure of personal information. Only when that invasion rises to the level of being clearly unwarranted does the privacy exemption apply. In these cases disclosure would not constitute a clearly unwarranted invasion of privacy. The Legislature was undoubtedly aware of the obvious invasion of privacy that would occur with disclosure of personnel records, yet chose to favor disclosure. To qualify for exemption under the personal privacy exception, disclosure must not only be unwarranted, but clearly unwarranted. The plaintiffs were unable to meet such a high burden.

The majority's reliance on *Pennsylvania v EEOC*, 493 US 182 (1990), to support the position that disclosure of performance evaluations to the public at large would not chill candid evaluations is misplaced. Unlike these cases, *Pennsylvania v EEOC* did not

involve disclosure of information to the general public, but instead
was limited to the issue of disclosure of information to the EEOC for
purposes of title VII enforcement. Its rationale cannot be extended
to say that disclosure of intensely personal information to the pub-
lic at large would not chill candid evaluations.

216 Mich App 79; 549 NW2d 15 (1996) affirmed in part and
reversed in part.

*White, Przybylowicz, Schneider & Baird, P.C.* (by
*Thomas A. Baird* and *Kathleen Corkin Boyle*), for
the plaintiff-appellant in *Bradley.*

*Hankins & Flanigan, P.C.* (by *Jayne M. Flanigan*
and *Timothy G. Holland*), for the plaintiff-appellant
Lansing Association of School Administrators.

*Thrun, Maatsch & Nordberg, P.C.* (by *Kevin S.
Harty, Roy H. Henley, James T. Maatsch,* and
*Philip A. Erickson*), for the defendants-appellees.

Amici Curiae:

*Hackett, Maxwell & Phillips* (by *Dawn L. Phillips-
Hertz* and *Lisa Rycus Mikalonis*) for Michigan Press
Association.

*Michael R. Shpiece* for Michigan Freedom of Infor-
mation Committee.

*Peggy J. Rostorfer* for Parent Support Network.

BRICKLEY, J. This consolidated case presents the
issue whether the personnel records of public school
teachers and administrators are exempt from disclo-
sure under the Freedom of Information Act. MCL
15.231; MSA 4.1801(1). We hold that the requested
records must be disclosed because they are public
records and are not within any exemption under the

FOIA. The decision of the Court of Appeals is affirmed
in part and reversed in part.

I

In 1993, the father of one of Ms. Bradley's students
made an FOIA request to the Saranac Community
School District, seeking copies of Ms. Bradley's per-
sonnel file. Ms. Bradley objected to the release of her
performance evaluations, disciplinary records, and
complaints filed against her. The school district
informed Ms. Bradley that it planned to release all the
requested information, subject to the redaction of cer-
tain passages. The school district indicated that it was
releasing the documents because it believed that it
was compelled to do so.

Ms. Bradley sought a declaratory judgment and an
injunction in the Ionia Circuit Court, contending that
the requested material was exempt from disclosure
under subsections 13(1)(a) and (n) of the FOIA. The
circuit court entered a temporary restraining order.
Following an in-camera inspection, during which it
compared the original documents with a set of
redacted documents, the circuit court ruled that the
documents should be released in the edited form.

Separately, in the same year, the Parents Support
Network submitted an FOIA request to the Lansing
School District Board of Education, seeking copies of
the written performance evaluations for nine princi-
pals employed by the school district. Representing
the administrators, the Lansing Association of School
Administrators (LASA) filed an action for a preliminary
injunction and a permanent injunction in the Ingham
Circuit Court to bar the school board from disclosing
the requested material. LASA alleged that the docu-

ments were exempt from disclosure under subsections 13(1)(a) and (n) of the Freedom of Information Act, and because of certain administrative protections. The circuit court ruled in favor of the school district.

The plaintiffs in both cases appealed, and the Court of Appeals consolidated the cases. In a per curiam opinion, the Court of Appeals affirmed the decisions of the circuit courts.[1] Relying on *Tobin v Civil Service Comm*,[2] the Court of Appeals concluded that the appellants were raising a "reverse FOIA" claim, i.e., seeking to prevent disclosure of public records under the FOIA. Reasoning that the FOIA, as a pro-disclosure statute, could not provide the plaintiffs with their desired relief, the Court of Appeals evaluated the plaintiffs' claims " 'as if the FOIA did not exist' . . . ."[3] Bypassing the FOIA, the Court of Appeals examined the common law and the constitutional right to privacy for a reason to prevent disclosure, and, finding none, ordered that the documents be disclosed, subject to "appropriate redactions."[4]

II

THE FREEDOM OF INFORMATION ACT

The issue presented by this consolidated case is whether the Michigan FOIA compels disclosure of the personnel records of public school teachers and administrators.

---

[1] 216 Mich App 79; 549 NW2d 15 (1996).

[2] 416 Mich 661; 331 NW2d 184 (1983).

[3] *Id.* at 86.

[4] *Id.* at 93.

The FOIA "protects a citizen's right to examine and to participate in the political process."[5] By requiring the public disclosure of information regarding the affairs of government and the official acts of public officials and employees, the act enhances the public's understanding of the operations or activities of the government.[6]

### 1. REVERSE FOIA

While we agree with the conclusion[7] of the Court of Appeals, we arrive at that destination by a different route. The Court of Appeals did not evaluate this case under the FOIA because it concluded that this action was a "reverse FOIA" action.[8] While that description may be apt, it does not automatically lead to the conclusion that the FOIA is irrelevant. As the plaintiffs' cases demonstrate, an action challenging an FOIA request may turn on an interpretation of whether the FOIA requires disclosure, notwithstanding that the FOIA does not prevent disclosure.[9]

For example, in *Bradley*, the plaintiff sought a declaratory judgment that her personnel records were exempt from disclosure under the FOIA because the school district had informed her that it was releasing the information under the belief that it was compelled to do so. If the plaintiff had prevailed in showing that

---

[5] *Booth Newspapers, Inc v Univ of Michigan Bd of Regents,* 444 Mich 211, 231; 507 NW2d 422 (1993).

[6] MCL 15.231(2); MSA 4.1801(1)(2).

[7] With the exception of its ruling regarding the redactions, discussed below.

[8] In a reverse FOIA action, the plaintiffs seek to enjoin rather than compel disclosure of public records. *Tobin,* n 2 *supra* at 670-671.

[9] *Tobin,* n 2 *supra* at 669 (holding that "[a]ny asserted right by third parties to prohibit disclosure must have a basis independent of the FOIA").

her personnel file was exempt, she may have been able to persuade the school district not to release the information.

Similarly, LASA's complaint asserted that the requested documents were exempt from disclosure under the FOIA *and* that certain administrative review procedures prevented the circulation of evaluation documents. If LASA had prevailed in its argument that its records were exempt, it could have enforced the confidentiality provision of the collective bargaining agreement to prevent disclosure of the evaluatory documents.

Because a favorable ruling on the applicability of the FOIA exemptions to their personnel records could have permitted the plaintiffs their requested relief under the FOIA,[10] the Court of Appeals erred in not analyzing this case under the FOIA.

## 2. APPLICATION OF THE FOIA TO THE PLAINTIFFS' PERSONNEL RECORDS

The Michigan FOIA provides for the disclosure of "public records" in the possession of a "public body."[11] Plaintiffs do not dispute that their school districts are "public bod[ies],"[12] or that the contents of their personnel records are "[p]ublic records."[13]

---

[10] *Id.*

[11] MCL 15.233; MSA 4.1801(3).

[12] "Public body" means: "A . . . school district . . . ." MCL 15.232(b)(iii); MSA 4.1801(2)(b)(iii).

[13] "Public record" means a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created. This act separates public records into 2 classes: (i) those which are exempt from disclosure under section 13, and (ii) all others, which are subject to disclosure under this act. [MCL 15.232(c); MSA 4.1801(2)(c).]

The FOIA requires the full disclosure of public records, unless those records are exempted under § 13.[14] The exemptions in § 13 are narrowly construed, and the burden of proof rests on the party asserting the exemption.[15] If a request for information held by a public body falls within an exemption, the decision becomes discretionary.[16]

### 3. EXEMPTIONS UNDER THE FOIA

The appellants contend that their personnel records are exempt from the mandatory disclosure requirements of the FOIA because their records fall within two exemptions—subsections 13(1)(a) and (n). Additionally, appellants LASA submit that subsection 13(1)(m) exempts their records. Because this issue raises a question of law, we review the Court of Appeals ruling de novo.[17]

### a. SUBSECTION 13(1)(a)

The FOIA's privacy exemption, subsection 13(1)(a), provides:

> A public body may exempt from disclosure as a public record under this act:
>
> (a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy. [MCL 15.243(1)(a); MSA 4.1801(13)(1)(a).]

---

[14] *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991).

[15] *Booth*, n 5 *supra* at 232.

[16] *Tobin*, n 2 *supra* at 667.

[17] *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

The privacy exemption consists of two elements, both of which must be present for the exemption to apply. First, the information must be of a "personal nature." Second, the disclosure of such information must be a "clearly unwarranted invasion of privacy."[18]

In the past, we have used two slightly different formulations to describe "personal nature." The first defines "personal" as "[o]f or pertaining to a particular person; private; one's own . . . . Concerning a particular individual and his intimate affairs, interests, or activities; intimate . . . ."[19] We have also defined this threshold inquiry in terms of whether the requested information was "personal, intimate, or embarrassing."[20] Combining the salient elements of each description into a more succinct test, we conclude that information is of a personal nature if it reveals intimate or embarrassing details of an individual's private life. We evaluate this standard in terms of "the 'customs, mores, or ordinary views of the community' . . . ."[21]

In these cases, the requested records were provided, under seal, to this Court for our evaluation. With regard to Ms. Bradley, her file contained documents pertaining to corrective or disciplinary actions, complaints filed, and performance evaluations. As for the administrators, their requested records contained administrative performance reviews.

---

[18] *Booth*, n 5 *supra* at 232.

[19] *Swickard*, n 14 *supra* at 547, quoting *The American Heritage Dictionary of the English Language: Second College Ed.*

[20] *Kestenbaum v Michigan State Univ*, 414 Mich 510, 549; 327 NW2d 783 (1982).

[21] *Swickard*, n 14 *supra* at 547.

Significantly, none of the documents contain information of an embarrassing, intimate, private, or confidential nature, such as medical records or information relating to the plaintiffs' private lives. Moreover, the appellants have not alleged specific private matters that would be revealed by the disclosure of their personnel records. Instead, the requested information consists solely of performance appraisals, disciplinary actions, and complaints relating to the plaintiffs' accomplishments in their public jobs. Because the requested information does not disclose intimate or embarrassing details of the plaintiffs' private lives, we hold that the requested records do not satisfy the personal-nature element of the privacy exemption.

Because we conclude that the records are not of a "personal nature," it is unnecessary for us to consider whether disclosure of the personnel files is a "clearly unwarranted invasion of privacy."[22] We hold that the FOIA's privacy exemption does not apply under these facts.

### b. SUBSECTION 13(1)(n)

The plaintiffs also contend that the requested information is exempt from disclosure under the FOIA because of subsection 13(1)(n), which exempts

> [c]ommunications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communications between officials

---

[22] See *Booth*, n 5 *supra* at 232.

and employees of public bodies clearly outweighs the public interest in disclosure.

This exemption does not apply to the plaintiff's personnel records for at least two reasons. First, the complaints from parents are not "communications and notes *within* a public body or *between* public bodies"[23] because the documents were created by parents, not by the school district.

Second, the appellants lack standing to assert this exemption. Subsection 13(1)(n) requires the public body that possesses the records to show that the public interest in disclosure is outweighed by the public interest in encouraging frank communications between officials and the employees of public bodies. Consequently, the proper party to raise this exemption is the school district, not the appellants. This conclusion is consistent with our Court of Appeals interpretation of this exemption.[24]

For the reasons stated above, we hold that the plaintiffs' personnel records are not exempt from the FOIA under subsection 13(1)(n).

### c. SUBSECTION 13(1)(m)

LASA argues that subsection 13(1)(m) exempts its personnel records. The following information is exempt under subsection 13(1)(m):

---

[23] Emphasis added.

[24] *In re Subpoena Duces Tecum to the Wayne Co Prosecutor (On Remand)*, 205 Mich App 700, 706; 518 NW2d 522 (1994); *Michigan Professional Employees Society v Dep't of Natural Resources*, 192 Mich App 483, 494; 482 NW2d 460 (1992).

> Medical, counseling, or psychological facts or evaluations concerning an individual if the individual's identity would be revealed by a disclosure of those facts or evaluation.[25]

The plaintiffs assert that their performance evaluations are "counseling evaluations" for purposes of this exemption. Neither this Court nor the Court of Appeals has addressed whether employment-related personnel evaluations are counseling evaluations. However, the Attorney General has addressed this issue, concluding that

> the context within which the word "counseling" appears indicates the Legislature's intent that this apply only where there is a professional relationship between counselor and counselee, not where there is an employment relationship.[26]

We agree with the Attorney General's analysis that the Legislature's use of the term "counseling" does not appear to include an employment relationship. Further, we acknowledge that the apparent purpose of this exemption is to prevent the disclosure of a person's identity through the release of medical, counseling, or psychological records. The exemption's concern is not with the release of the underlying information, only with the release of the patient's identity. In particular, we note that the exemption prevents the disclosure of certain records only if disclosure would reveal the patient's identity. If the patient's identity were already public information, the exemption would appear inapplicable. In the present case, the parties seeking the plaintiffs' records requested them

---

[25] MCL 15.243(1)(m);  MSA 4.1801(13)(1)(m).
[26] OAG, 1979-1980, No 5,500, pp 255, 273 (July 23, 1979).

by name, and not by job title. Thus, this exemption would not apply even if the plaintiffs' records were "counseling evaluations" because the plaintiffs' identities were already known. We conclude that subsection 13(1)(m) does not exempt the plaintiffs' employment records.

### d. LEGISLATIVE INTENT

Our conclusion that the plaintiffs' personnel records are not exempt under the FOIA is bolstered by the absence of any indications that the Legislature intended a different result. As the Court of Appeals noted below, the Legislature specifically exempted the personnel records of law enforcement agencies from disclosure.[27] This Court recognizes the maxim *expressio unius est exclusio alterius*; that the express mention in a statute of one thing implies the exclusion of other similar things.[28] Because the Legislature realized that the FOIA could require the disclosure of the personnel records of law enforcement personnel, the conclusion that the Legislature rejected

---

[27] MCL 15.243(1)(t)(ix); MSA 4.1801(13)(1)(t)(ix):

A public body may exempt from disclosure as a public record under this act:

\*     \*     \*

Unless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance, public records of a police or sheriff's agency or department, the release of which would do any of the following:

\*     \*     \*

Disclose *personnel records* of law enforcement agencies. [Emphasis added.]

[28] *Stowers v Wolodzko*, 386 Mich 119; 191 NW2d 355 (1971).

the opportunity to extend this exemption to other public employees is inescapable. Additionally, accepting the appellants' interpretation of the FOIA would render the law enforcement exemption redundant, thus violating another rule of statutory construction: namely, that no part of a statute should be treated as mere surplusage or rendered nugatory.[29]

This Court has recognized that the Michigan FOIA is patterned after the federal FOIA.[30] Unlike the Michigan FOIA, the federal FOIA has a specific exemption for personnel records.[31] Because the Legislature modeled its FOIA on the federal version, we must conclude that by not adopting the specific language of the federal privacy exemption the Legislature intended that the personnel records of non-law enforcement public employees be available to the public.

The plaintiffs assert that the integrity of the evaluation process will be compromised by the disclosure of their personnel records. They suggest that the evaluators will be less inclined to candidly evaluate their employees if the evaluations are to be made public. We draw the opposite conclusion. Making such documents publicly available seems more likely to foster candid, accurate, and conscientious evaluations than suppressing them because the person performing the evaluations will be aware that the documents being prepared may be disclosed to the public, thus subjecting the evaluator, as well as the employee

---

[29] *Smith v Employment Security Comm*, 410 Mich 231; 301 NW2d 285 (1981).

[30] *Tobin*, n 2 *supra* at 671.

[31] 5 USC 552(b)(6) exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . ."

being evaluated, to public scrutiny. The knowledge that their efforts may be brought before the public at some distant date may encourage those who evaluate their peers to accurately reflect the achievements, or lack thereof, of those being evaluated.

An argument similar to the plaintiffs' argument was rejected by the United States Supreme Court in *Univ of Pennsylvania v EEOC*.[32] In that case, the Court concluded that the release of written evaluations of college professors, which had been prepared to assist in tenure decisions, would not create a "chilling effect" on candid evaluations.

> Although it is possible that some evaluators may become less candid as the possibility of disclosure increases, others may simply ground their evaluations in specific examples and illustrations in order to deflect potential claims of bias or unfairness. Not all academics will hesitate to stand up and be counted when they evaluate their peers.[33]

Like the United States Supreme Court, we are not ready to assume the worst about those in the public schools who are in a position to evaluate others.[34]

We conclude that the requested information does not fit within any of the exemptions of § 13 of the FOIA. Because none of the exemptions apply, the requested information must be disclosed.[35]

#### 4. COMMON-LAW PRIVACY

Relying on our statement in *Tobin, supra*, that any right to prohibit disclosure must have a basis inde-

---

[32] 493 US 182; 110 S Ct 577; 107 L Ed 2d 571 (1990).

[33] *Id.* at 200-201.

[34] *Id.*

[35] MCL 15.232(c); MSA 14.1801(2)(c); *Swickard*, n 14 *supra* at 544.

pendent of the FOIA,[36] the Court of Appeals presumed that a common-law invasion of privacy would prevent the disclosure of documents requested under the FOIA. This presumption was erroneous because an applicable statute always surmounts a conflicting common-law rule.[37]

Although the Legislature has provided scant guidance on the concept of privacy,[38] it has specified that only *clearly unwarranted* invasions of privacy would be exempted.[39] By using a higher standard, the Legislature permits disclosures of public records that are invasions of privacy, as long as that invasion of privacy is not clearly unwarranted. Therefore, an invasion of privacy that is less than clearly unwarranted cannot stand as an obstacle to disclosure. This fact underscores the logic of analyzing a reverse FOIA claim under the FOIA. If a court determines that the privacy exemption does not apply, no further analysis under invasion of privacy is necessary. After all, if an invasion of privacy does not satisfy the heightened clearly unwarranted standard under the privacy exemption, a lesser finding of invasion of privacy cannot serve as a basis to preclude disclosure because the FOIA, as a statute, governs regardless of whether there may have been a claim under common law.

Thus, in a reverse FOIA action, a determination whether the FOIA requires disclosure of the requested documents should be the first step in an action challenging an FOIA request. A finding that the documents are public records under the FOIA, and no exemptions

---

[36] *Tobin*, n 2 *supra* at 668-669.

[37] *Albro v Allen*, 434 Mich 271, 286; 454 NW2d 85 (1990).

[38] *Swickard*, n 14 *supra* at 556.

[39] MCL 15.243(1)(a);  MSA 4.1801(13)(1)(a).

apply, requires that the documents be disclosed.[40]
Additionally, a finding that the privacy exemption
does not apply obviates the need for an analysis
under the common law, because, irrespective of
whether there was a common-law claim, the FOIA gov-
erns the resolution of the case. Therefore, *Beaumont
v Brown*,[41] which plaintiffs argue prevents the release
of the requested documents under the common-law
right of privacy, is overruled to the extent that it con-
flicts with the FOIA.

Principles of common-law privacy do come into
play when the court is determining whether informa-
tion of a personal nature constitutes a "clearly unwar-
ranted invasion of an individual's privacy."[42] Because
we have already concluded that the requested infor-
mation does not satisfy the "personal nature" element
of the FOIA, we do not need to address whether the
request of that information is a "clearly unwarranted
invasion of an individual's privacy."[43]

### 5. CONSTITUTIONAL LAW

The Court of Appeals, sua sponte, ruled that the
federal right of privacy did not prevent the disclosure
of the requested records. This argument was not
raised by any party at any stage of the litigation.
While we believe that the Court of Appeals determi-
nation was correct,[44] we decline to fully address this

---

[40] MCL 15.232(c); MSA 4.1801(2)(c).

[41] 401 Mich 80, 95; 257 NW2d 522 (1977).

[42] MCL 15.243(1)(a); MSA 4.1801(13)(1)(a); *Swickard*, n 14 *supra* at
546-547; *State Employees Ass'n v Dep't of Management & Budget*, 428
Mich 104, 123; 404 NW2d 606 (1987); *Kestenbaum*, n 20 *supra* at 528, n 7.

[43] See *Booth*, n 5 *supra* at 234 (holding that subsection 13[1][a] does
not apply if the information is not of a personal nature).

[44] See *Tobin*, n 2 *supra* at 677-678.

argument without the benefit of briefing and oral argument from the parties.

### 6. THE COLLECTIVE BARGAINING AGREEMENT

Separately, LASA contends that the FOIA permits public bodies to exempt the deliberative process of their subordinates from public scrutiny. Both parties agreed in their collective bargaining agreement that the evaluation of school administrators would be conducted according to the appellee school district's Administrative Performance Review Handbook. The handbook's evaluation form declares that "[t]his evaluation document will be reviewed only by appropriate administrative personnel of the Lansing School District."

We agree with the Court of Appeals that the defendant school district cannot "eliminate its statutory obligations to the public merely by contracting to do so with plaintiff LASA."[45] The FOIA requires disclosure of all public records not within an exemption.[46] No exemption provides for a public body to bargain away the requirements of the FOIA.

### 7. REDACTIONS

Finally, we turn to whether redaction is appropriate, and, if so, what may be redacted. The parties have asked for guidance in the matter of redactions, and we are sympathetic to their concerns.

---

[45] *Lansing Bd of Ed*, n 1 *supra* at 93, citing *Citizens Ins Co of America v Federated Mut Ins Co*, 199 Mich App 345, 347; 500 NW2d 773 (1993); *Shapiro v Steinberg*, 176 Mich App 683, 687; 440 NW2d 9 (1989).

[46] MCL 15.232(c); MSA 4.1801(2)(c).

Redaction is appropriate whenever disclosure is discretionary.[47] This means that a public body is permitted to redact any information that falls within an exemption of the FOIA. For example, if details in the plaintiffs' files had revealed "intimate or embarrassing details of the plaintiff's private lives," such as information relating to a medical condition, redaction would be appropriate.

In the present case, defendant Saranac Schools provided the circuit court with original and redacted versions of Ms. Bradley's records. As mentioned above, copies were provided to this Court. The proposed redactions were extensive, to say the least. Here is an excerpt from a memo from the principal to the plaintiff requesting that she take corrective action.

> You must [blank]. There are [blank] and [blank] all [blank] on [blank] and [blank]. You were given several [blank] by other teachers plus the [blank] you already have. You have plenty of [blank] to [blank] these [blank] in. Take care of this situation. [Memo of February 23, 1993, to Christine Bradley from David Benjamin.]

Redactions such as those made in this case are entirely at cross purposes with the FOIA, which entitles all persons to "*full and complete information* regarding the affairs of government and the official acts of those who represent them as public officials and public employees,"[48] consistent with the act. Once a document has been redacted to the extent that the example above was, its informative value is nil. One purpose of the FOIA is to allow citizens to obtain information about their government so that

---

[47] See *Tobin*, n 2 *supra.*

[48] MCL 15.231(2); MSA 4.1801(1)(2) (emphasis added).

they may more fully participate in the democratic process.[49] This objective is hindered when a citizen requests information, only to be provided with an edited version that gives no indication of the true content of the document. While we have no doubt that the school district edited these documents with the best of intentions, this result is unacceptable. With regard to these documents, the only information that should have been blocked out was the names of the individual students and other persons not employed by the public body.[50]

### 8. CONCLUSION

We conclude that the Freedom of Information Act compels the disclosure of the appellants' personnel records. Because the requested information consisted of information related to the appellants' public employment, we hold that the appellants' personnel records are not within the privacy exemption of subsection 13(1)(a). The records are not exempt under subsection 13(1)(n) because the appellants do not have standing to raise the exemption.

We affirm the decision of the Court of Appeals that the plaintiffs' records must be disclosed, but reject its analysis. We remand this case to the trial court with orders to release the records in an unedited format, subject to the redactions discussed above.

MALLETT, C.J., and RILEY, and WEAVER, JJ., concurred with BRICKLEY, J.

---

[49] *Id.*

[50] *Booth Newspapers, Inc v Kalamazoo School Dist*, 181 Mich App 752; 450 NW2d 286 (1989) (approving redactions of student's names in public records relating to allegations of sexual misconduct).

BOYLE, J. (*concurring in part and dissenting in part*). The question presented is whether the performance evaluations, disciplinary records, and complaints filed against public school teachers and administrators are exempt from disclosure under the Freedom of Information Act. I concur in the majority's conclusion that the performance evaluations, disciplinary actions, and complaints in issue are subject to mandatory disclosure under the FOIA. I disagree, however, with the majority's conclusion that the requested documents are not personal in nature. In my judgment, performance evaluations, disciplinary actions, and complaints are "[i]nformation of a personal nature." MCL 15.243(1)(a); MSA 4.1801(13)(1)(a). Inasmuch as I believe disclosure of the records in this case would not constitute a clearly unwarranted invasion of privacy, I agree that the requested records are not exempt from disclosure under the personal privacy exemption of subsection 13(1)(a). I also agree that the documents are not exempt under subsections 13(1)(m) or (n) of the FOIA. I write separately only to express my disagreement with the majority's analysis under subsection 13(1)(a).

I

The first step in analyzing the applicability of the subsection 13(1)(a) privacy exemption is to determine if the requested documents are "[i]nformation of a personal nature." Information is of a "personal nature" if it is "personal, intimate, or embarrassing."[1] Similarly, "personal" has been defined as "[o]f or pertaining to a particular person; private; one's own

---

[1] *Kestenbaum v Michigan State Univ*, 414 Mich 510, 549; 327 NW2d 783 (1982).

. . . . Concerning a particular individual and his intimate affairs, interests, or activities; intimate . . . ."[2]

Rather than rely on these definitions, the majority adopts its own definition, concluding that information is personal only if it reveals "intimate or embarrassing details of an individual's private life."[3] Labeled as a more "succinct test," the majority's characterization of the term "personal nature" significantly narrows the definition of the term and, hence, the scope of the exception. The statute provides that certain privacy interests are weighty enough to warrant an exemption from disclosure under the FOIA. Because even personal information will be disclosed when disclosure is not a clearly unwarranted invasion of privacy, it is not necessary to restrict the scope of the exemption by narrowly defining the term "personal." Clearly, information in public records may be "personal, intimate, or embarrassing" even if not related to an individual's private life. Indeed, because problems typically surface in the work environment in changes in performance, the line between personal and professional cannot be neatly bifurcated. The definitions adopted in *Kestenbaum v Michigan State Univ*, 414 Mich 510; 327 NW2d 783 (1982), and *Swickard v Wayne Co Medical Examiner*, 438 Mich 536; 475 NW2d 304 (1991), are an accurate characterization of the term "personal nature," and I prefer those definitions over the one advocated by the majority.[4]

---

[2] *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 547; 475 NW2d 304 (1991).

[3] *Ante*, p 294.

[4] In *Swickard*, the word "private" was used to help define the meaning of "personal." In that definition, "private" was used in the same manner as the word "intimate." It does not follow that the word "private" in the *Swickard* definition requires that information relate to an individual's pri-

II

Without question, performance evaluations, disciplinary actions, and complaints about public employees are personal in nature. To say they are not would be to ignore the "customs, mores, or ordinary views of the community . . . ." *Swickard, supra* at 547; *Booth Newspapers, Inc v Univ of Michigan Bd of Regents,* 444 Mich 211, 232-233; 507 NW2d 422 (1993). By definition, performance evaluations call for evaluation of both positive and negative attributes of individual employees. To serve their purpose of improving performance, personal shortcomings, flaws, and overall inabilities must be documented and detailed alongside character strengths. Meaningful evaluations contemplate candid and detailed exploration of such sensitive issues as promotional opportunities, pay or merit increases, personality defects, superior or inferior work performance, and counseling needs. Estimation of an individual's professional aptitude can so clearly cause humiliation or embarrassment to an individual, and damage an individual's reputation or career, that compelling public disclosure without considering the personal nature of the documents will inevitably result in sanitizing the evaluation. More importantly to the statutory interpretation before us, we doubt that the Legislature would have adopted a definition of the term personal that would discourage the creation of important information.

The personal nature of performance evaluations has been well described. In *Brown v Seattle Public*

vate life, as opposed to an individual's professional life, in order to be considered personal.

*Schools*, 71 Wash App 613; 860 P2d 1059 (1993), the court stated:

> The sensitivity of any human being to disclosure of information that may be taken to bear on his or her basic competence is sufficiently well known to be an appropriate subject of judicial notice. . . . This sensitivity goes beyond mere embarrassment, which alone is insufficient grounds for nondisclosure . . . . Employee evaluations qualify as personal information that bears on the competence of the subject employees.[5]

In *Federal Labor Relations Authority v United States Dep't of Commerce*, 295 US App DC 263, 268; 962 F2d 1055 (1992), mandatory personnel evaluations were described as "intensely personal" documents. Likewise, in *Connolly v Bromery*, 15 Mass App 661, 664; 447 NE2d 1265 (1983), the court noted that "[r]aw data appraising the job performance of individuals . . . is particularly personal and volatile." Similarly, the court in *Trahan v Larivee*, 365 So 2d 294, 300 (La App, 1978), maintained:

> [T]he evaluation report is very personal and directly affects the employee. To publish or disclose such personal opinions may embarrass or humiliate the employee among his fellow employees, friends or family. It may affect his future employment. Humiliation or embarrassment could flow even though the rating would be "outstanding" as this rating may create envy or jealousy in other employees.[6]

---

[5] *Id.* at 617-618, citing *Detroit Edison Co v NLRB*, 440 US 301, 318; 99 S Ct 1123; 59 L Ed 2d 333 (1979).

[6] For additional cases that recognize the personal nature of performance evaluations, see *Dawson v Daly*, 120 Wash 2d 782, 797; 845 P2d 995 (1993) (employee evaluations qualify as personal information that bear on the competence of employees); *Chairman, Criminal Justice Comm v Freedom of Information Comm*, 217 Conn 193, 199-200; 585 A2d 96 (1991) (disclosure of performance evaluations would carry significant potential

Despite ample justification for concluding that the requested documents are information of a personal nature, the majority holds today that the requested documents do not disclose intimate or embarrassing details and thus are not personal in nature.[7] Because I believe that these documents clearly contain information of a personal nature to these plaintiffs, I disagree.

III

Having concluded that the requested information is personal, the next step is to determine whether disclosure of the material would constitute a clearly unwarranted invasion of the plaintiffs' privacy. Some invasion of privacy will inevitably occur upon disclosure of personal information. Only when that invasion rises to the level of being clearly unwarranted does the privacy exemption apply.

After reviewing redacted and unredacted versions of the requested records, I am persuaded that disclo-

---

for embarrassment); *Pawtucket Teachers Alliance v Brady,* 556 A2d 556, 559 (RI, 1989)  (performance evaluations are highly personal in nature); *Ripskis v Dep't of Housing & Urban Development,* 241 US App DC 8; 746 F2d 1 (1984)  (even outstanding performance evaluations may contain derogatory information and embarrass an employee if disclosed); *Missoulian v Bd of Regents of Higher Ed,* 207 Mont 513; 675 P2d 962 (1984) (evaluations contain information of a sensitive nature); *Metropolitan Life Ins Co v Usery,* 426 F Supp 150, 168 (D DC, 1976),  aff'd sub nom *Nat'l Organization of Women v Social Security Administration,* 237 US App DC 118; 736 F2d 727 (1984)  (job evaluations reflect highly personal details about company employees and if disclosed could be embarrassing and painful to the employee); *Trenton Times Corp v Trenton Bd of Ed,* 138 NJ Super 357, 363; 351 A2d 30 (1976)  (performance evaluations are only subjective opinions of the performance of the employee, vary with the person giving the rating, and should remain confidential); *Vaughn v Rosen,* 383 F Supp 1049, 1055 (D DC, 1974),  aff'd 173 US App DC 187; 523 F2d 1136 (1975)  (disclosure of evaluations could expose employees to loss of future employment or friends and acute embarrassment).

[7] *Ante,* p 295.

sure would not constitute a clearly unwarranted inva-
sion of privacy. The Legislature was undoubtedly
aware of the obvious invasion of privacy that would
occur with disclosure of personnel records, yet chose
to favor disclosure. To qualify for exemption under
the personal privacy exception, disclosure must not
only be unwarranted, but *clearly unwarranted*. The
plaintiffs were unable to meet such a high burden in
the instant case. Because I am unpersuaded that dis-
closure of the records in issue would constitute a
clearly unwarranted invasion of plaintiffs' privacy, I
agree with the majority that the FOIA's privacy exemp-
tion does not apply.

IV

Although I concur in the majority's result, I believe
the majority's reliance on *Univ of Pennsylvania v
EEOC*, 493 US 182; 110 S Ct 577; 107 L Ed 2d 571
(1990), to support the position that disclosure of per-
formance evaluations to the public at large would not
chill candid evaluations is misplaced. *Ante*, p 300. In
*Univ of Pennsylvania v EEOC*, the petitioner sought
recognition by the Supreme Court of a common law
privilege precluding disclosure absent a judicial find-
ing of particularized necessity of access, despite the
fact that title VII authorized the EEOC to subpoena any
evidence "relevant" to a charge under investigation.
Unlike the present cases, *Univ of Pennsylvania v
EEOC* did not involve disclosure of information to the
general public, but instead was limited to the issue of
disclosure of information to the EEOC for purposes of
title VII enforcement. I disagree that the rationale of
*Univ of Pennsylvania v EEOC* can be extended so
far as to say that disclosure of intensely personal

information to the public at large would not chill candid evaluations.

In *Univ of Pennsylvania v EEOC*, the commission exercised its subpoena powers under title VII of the Civil Rights Act of 1964 to gain access to information including confidential letters, written letters of evaluation, and documents reflecting internal deliberations relating to teacher tenure proceedings at the University of Pennsylvania. Access was necessary to enable the commission to investigate allegations of racial or sexual discrimination in the university's tenure process. Without access to these documents the EEOC would be unable to determine whether the allegations had merit. *Id.* at 186. By failing to comply with the commission's request, the university essentially thwarted the EEOC's investigation.

As part of its argument, the University of Pennsylvania claimed that "[a]s more and more peer evaluations are disclosed to the EEOC and become public, a 'chilling effect' on candid evaluations and discussions of candidates will result." *Id.* at 197. Before concluding that disclosure would not have a chilling effect on candid evaluations, the Supreme Court noted that it is unlawful under title VII for "any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under [§ 2000e-8]" of the act. *Id.* at 192. Violations of § 2000e-8 carry with it criminal penalties. *Id.* In other words, pursuant to title VII, disclosure to the EEOC does not equal disclosure to the general public, and serious sanctions await any EEOC officer or employee who publicly discloses accessed information. In this context the Supreme Court declined to recognize a special privi-

lege that would conflict with the value that the public has a right to each man's evidence. True, the Supreme Court was not prepared to "assume the worst about those in the [academic community]," *ante*, p 300, however this assumption simply expressed the view of the Court that disclosure to the EEOC of materials relevant to charges of racial or sexual discrimination would not be so harmful to academic interests as to warrant recognition of an evidentiary privilege.

V

For the reasons stated above, I hold that plaintiffs' performance evaluations, disciplinary actions, and complaints are not exempt from disclosure under subsection 13(1)(a) of the FOIA. Accordingly, I concur with the majority to remand this case to the trial court with orders to release the records, subject to the redactions discussed by the majority.

CAVANAGH and KELLY, JJ., concurred with BOYLE, J.