*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRAVERSE CITY RECORD-EAGLE,

        Plaintiff-Appellee/Cross-Appellant,

v

TRAVERSE CITY AREA PUBLIC SCHOOLS
BOARD OF EDUCATION and M. SUE KELLY,

        Defendants-Appellants/Cross-
        Appellees.

FOR PUBLICATION
May 13, 2021
9:10 a.m.

No. 354586
Grand Traverse Circuit Court
LC No. 20-035220-CZ

Before: MURRAY, C.J., and FORT HOOD and GLEICHER, JJ.

FORT HOOD, J.

Defendants, the Traverse City Area Public Schools Board of Education (TCAPS) and M. Sue Kelly,[1] appeal by leave granted[2] the trial court's decision granting plaintiff's, the Traverse City Record-Eagle's,[3] motion for partial summary disposition and granting defendants' motion for partial summary disposition. The trial court granted plaintiff's motion as it related to its Freedom of Information Act (FOIA) disclosure claim, and it granted defendants' motion as it related to plaintiff's Open Meetings Act (OMA) violation claim. Defendants appeal the trial court's decision on the FOIA claim. In a cross-appeal, plaintiff appeals the trial court's decision on the OMA claim. We affirm as to both issues.

## I. FACTUAL BACKGROUND

This case involves the interplay between FOIA and the OMA. Ann Cardon was hired by defendants as the school superintendent but, soon after her hiring, various complaints arose against

---

[1] M. Sue Kelly was the Board President of TCAPS.

[2] *Traverse City Record-Eagle v Traverse City Area Pub Sch Bd of Ed*, unpublished order of the Court of Appeals, entered October 9, 2020 (Docket No. 354586).

[3] Plaintiff is a Traverse City newspaper.

her.  Defendants convened a meeting to discuss the complaints, and Cardon requested a closed session under the OMA.  The closed session was granted.  At the session, a document created by Kelly and referred to by the parties as the "Kelly document" contained the complaints against Cardon.  That document is the subject of the FOIA issue in this case.  No formal decision was reached after the closed session, however, soon after the meeting, Cardon and defendants mutually agreed that Cardon would resign.  After this, defendants held an open meeting and moved to name Jim Pavelka as the interim superintendent.  At a future open meeting, defendants formally ratified Pavelka's contract.

Plaintiff filed its FOIA request and requested the Kelly document; defendants refused, maintaining that the document was exempt from disclosure.  Plaintiff filed this action, seeking the Kelly document and alleging numerous OMA violations.  Relevant to this appeal, plaintiff argued that defendants' conduct with Pavelka was improper and outside the OMA requirements.  Each party moved for partial summary disposition.  The trial court ultimately granted summary disposition in plaintiff's favor as to the FOIA claim, ruling that the Kelly document was subject to disclosure.  The trial court granted summary disposition in defendants' favor as to the OMA claim, ruling that plaintiff failed to create a genuine issue of material fact and that defendants were entitled to judgment as a matter of law.

## II.  STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).  A motion is properly granted pursuant to MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom*, 287 Mich App at 415.  This Court "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists.  A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416.  "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

Additionally, questions of statutory interpretation, construction, and application are reviewed de novo. *Dextrom*, 287 Mich App at 416.  "When interpreting a statute, [this Court] must ascertain the Legislature's intent," which is accomplished "by giving the words selected by the Legislature their plain and ordinary meanings, and by enforcing the statute as written." *Griffin v Griffin*, 323 Mich App 110, 120; 916 NW2d 292 (2018) (quotation marks and citation omitted). If a statute is unambiguous, it must be applied as plainly written. *McQueer v Perfect Fence Co*, 502 Mich 276, 286; 971 NW2d 584 (2018).  This Court may not read something into the statute "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id*. (quotation marks and citation omitted).

Finally, "certain FOIA provisions require the trial court to balance competing interests," and, "when an appellate court reviews a decision committed to the trial court's discretion, such as [a] balancing test . . . , the appellate court must review the discretionary determination for an abuse of discretion and cannot disturb the trial court's decision unless it falls outside the principled range of outcomes." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470-471; 719

NW2d 19 (2006). But "where a party challenges the underlying facts that support the trial court's decision," the clear error standard applies. *Id*. at 470. "Clear error exists only when the appellate court is left with the definite and firm conviction that a mistake has been made." *Id*. at 471 (quotation marks and citation omitted).

## II. THE KELLY DOCUMENT

Defendants contend that the trial court incorrectly concluded that the Kelly document was unprotected by the OMA, and disclosable under FOIA. We disagree.

The Freedom of Information Act, MCL 15.231 *et seq*., "requires public bodies to release certain information at a citizen's request." *Warren v Detroit*, 261 Mich App 165, 166; 680 NW2d 57 (2004). Except when expressly exempted, "a person has a right to inspect, copy, or receive copies of [a] requested public record of [a] public body." MCL 15.233(1). A public record is defined to be

> a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created. Public record does not include computer software. This act separates public records into the following 2 classes:
>
> (*i*) Those that are exempt from disclosure under [MCL 15.243].
>
> (*ii*) All public records that are not exempt from disclosure under [MCL 15.243] and that are subject to disclosure under this act. [MCL 15.232(i).]

The purpose of FOIA is for people to "be informed so that they may fully participate in the democratic process." MCL 15.231(2).

Our Legislature created numerous exemptions to the general rule of disclosure. See MCL 15.243. Relevant to this appeal are "[r]ecords or information specifically described and exempted from disclosure by *statute*." MCL 15.243(1)(d) (emphasis added). One such exemption described by statute applies to minutes of a closed meeting conducted under the OMA, MCL 15.261 *et seq*. Normally, the minutes of open meetings held by public bodies are disclosable to the public. See MCL 15.269. The same is not true of the minutes for closed meetings.

MCL 15.268 provides:

> A public body may meet in a *closed* session only for the following purposes:
>
> (a) To consider the dismissal, suspension, or disciplining of, or to hear *complaints* or charges brought against, or to consider a periodic personnel evaluation of, a public officer, employee, staff member, or individual agent, *if the named person requests a closed hearing*. A person requesting a closed hearing may rescind the request at any time, in which case the matter at issue shall be considered after the rescission only in open sessions. [Emphasis added.]

MCL 15.267(2) provides that "[a] separate set of minutes shall be taken by the clerk or the designated secretary of the public body at the closed session. These minutes shall be retained by the clerk of the public body, *are not available to the public*, and shall only be disclosed if required by a civil action filed under [MCL 15.270], [MCL 15.271], or [MCL 15.273]."[4] (Emphasis added.) These minutes are not disclosable to the public under a FOIA request; only a court order can require their disclosure. *Titus v Shelby Charter Twp*, 226 Mich App 611, 615; 574 NW2d 391 (1997). The exemptions from MCL 15.243 "are narrowly construed, and the burden of proof rests on the party asserting the exemption." *Bradley v Saranac Community Sch Bd of Educ*, 455 Mich 285, 293; 565 NW2d 650 (1997).

Defendants heavily rely on *Titus* for the contention that the Kelly document is not disclosable because it should be considered part of the exempt meeting minutes. In *Titus*, this Court held that the meeting "minutes" of a closed session described in the OMA and exempt from disclosure include transcripts of the closed meeting. *Titus*, 226 Mich App at 615. In reaching this conclusion, we stated:

> The plain and ordinary meaning of "minutes" of a meeting refers to the official record of the proceedings at a group's meeting. *Random House Webster's College Dictionary* (2d ed. 1995), p. 837. [MCL 15.269(1)] of the OMA does not purport to be an exclusive listing of the information that may be contained in minutes of a meeting. The requirement in the statute that the "minutes must show" certain items is properly read as a minimum requirement, but not as excluding other information. We therefore hold that a transcript of the proceedings in a public body's closed session is part of the official record and, hence, part of the minutes of the session. [*Id*. at 615-616.]

Defendants' attempts to analogize *Titus* to the present case are unpersuasive. Defendants refer us to the *Titus* Court's statement that "[MCL 15.269(1)] of the OMA does not purport to be an *exclusive listing* of the information that may be contained in minutes of a meeting." *Id*. at 615. Defendants rely on this statement to say that the Kelly document may properly be considered part of the meeting minutes. However, the crux of our decision in *Titus* centered on the close relation between the definitions of minutes and transcripts. As noted, *Titus* involved the *transcripts* of a closed session, and it made logical sense in that case for this Court to hold that transcripts are part of a meeting's minutes. See *id*. at 615-616 (referring to the plain and ordinary meaning of "minutes" as "the official record of the proceedings at a group's meeting"). That is, just because the OMA does not give an *exclusive* list of what may be contained in a meeting's minutes does not mean that every document referred to in the meeting can be said to be a part of the same.[5]

---

[4] Such civil actions include: an action challenging the final decision of a public body, MCL 15.270; an action to enforce compliance, MCL 15.271; and an action alleging that a public official intentionally violated the OMA, MCL 15.273.

[5] To that end, we note defendants' argument that, because the complaint in this case was made part of the official record, it was part of the minutes and therefore exempt. Again, the focus should be on the plain and ordinary meaning of "minutes," not on whether the Kelly document was made

Defendants also suggests that the Kelly document assisted in TCAPS's deliberations, and that, under *Titus*, this exempted the document from disclosure. This argument is also unavailing. In *Titus*, this Court addressed an argument by the plaintiff that "the communications documented in a transcript of a public body's closed session must be further categorized as 'deliberative' or 'factual non-deliberative,' with only 'deliberative' information exempt from disclosure under [MCL 15.267(2)]." *Id*. at 616. We rejected this argument, holding "that such a distinction has no statutory basis," and that, although "the OMA makes a distinction between a public body's deliberations and its decisions," the OMA "does not, however, classify the content of the communications that take place during the deliberation process as either factual or deliberative." *Id*. We explained:

> In this case, the testimony of the witnesses at the March 30, 1994, closed session, as well as the dialogue between board members during the session, may be said to be part of the process of deliberating whether to terminate plaintiff's employment. The minutes of the closed session include the transcript of the proceedings, *without regard to whether the communications transcribed were factual statements provided to help the board make an informed decision or were part of board members' actual deliberations*. [*Id*. (emphasis added).]

In other words, and again, the *Titus* Court focused on the fact that the transcripts were part of the minutes because of the "plain and ordinary meaning of 'minutes,' " and not because the transcripts involved deliberations of the public body within the closed session. See *id*. at 615-616. Defendants fail to persuasively show how the Kelly document, which contained complaints against Cardon, falls within the plain and ordinary meaning of "minutes."

Our decision is bolstered by our Supreme Court's decision in *Bradley*, wherein the Court held that the personnel files of public teachers are not exempt from disclosure under FOIA. In that case, the public teachers contended that various exemptions from MCL 15.243 applied, but the Court rejected each contended exemption.[6] *Bradley*, 455 Mich at 293-300. *Bradley* was an action by the public teachers to *prevent* disclosure; this Court described the action as a "reverse FOIA action," and our Supreme Court stated that this "may be [an] apt" description. *Id*. at 291 (quotation marks and citation omitted). Regardless, the Court stated that actions challenging a "FOIA request may turn on an interpretation of whether the FOIA requires disclosure, notwithstanding that the

---

part of the official record. We agree with the trial court that to hold otherwise would seemingly allow any public body to attach *anything* to the official record in order to exempt it from disclosure, essentially rendering other exemptions and parts of the OMA surplusage and nugatory. See *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) (stating that "courts 'must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.' ").

[6] Admittedly, the argued exemptions in *Bradley* are different from those advanced in the present appeal. We further note defendants' argument that *Bradley* did not involve issues related to the OMA. Irrespective of that issue, *Bradley* is instructive for its application of FOIA to the type of document at issue in this case.

FOIA does not prevent disclosure." *Id*. Accordingly, the Court examined the teachers' action under FOIA. See *id*. at 291-300. Of note, when examining the proposed exemptions, the Court stated that, for one of the plaintiffs, the personnel records contained "corrective or disciplinary actions, *complaints filed*, and performance evaluations." *Id*. at 294 (emphasis added). Absent a specific exemption related to the same, such files were ultimately deemed to be disclosable. *Id*. at 300. See also *Detroit Free Press, Inc v Detroit*, 480 Mich 1079, 1079; 744 NW2d 667 (2008) (concluding that a settlement agreement and "Notice of Rejection" were disclosable under FOIA because neither were the subject of a specific FOIA exemption).

Defendant points out that the trial court placed considerable weight on an Attorney General opinion, OAG 1990, NO 6668, and that it erred in doing so.[7] Noting that the opinion comports with the subsequent decision in *Bradley*, we disagree. The opinion addressed the following question:

> When a board of education lawfully convenes in closed session in accordance with section 8(a) of the Open Meetings Act to review a superintendent's evaluation, is the evaluation document discussed in the closed session exempt from disclosure under section 13(1)(d) of the Freedom of Information Act?

The opinion referenced *Ridenour v Bd of Ed of City of Dearborn Sch Dist*, 111 Mich App 798, 804; 314 NW2d 760 (1981), abrogated on other grounds by *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125; 860 NW2d 51 (2014), which held that the OMA did not permit a closed meeting session for routine performance evaluations of a public employee. *Ridenour*, 111 Mich App at 804. The Attorney General opinion noted that, after *Ridenour*, the Michigan Legislature amended the OMA to explicitly permit closed sessions for routine performance evaluations. OAG 1990, NO 6668. The Attorney General opinion concluded that, because the Legislature amended the OMA but not FOIA, this meant that the Legislature did not intend for the performance evaluations to be exempted from FOIA disclosure. OAG 1990, NO 6668. We note that *Bradley* was decided in 1997, and the personnel files in that case involved performance evaluations. *Bradley*, 455 Mich at 294. Thus, in holding that that the files were not exempt, *id*. at 300, our Supreme Court's opinion in that case complimented the Attorney General opinion.

Defendants point out that the performance evaluations discussed in the Attorney General opinion are not the same as the Kelly document, and while we agree to some extent, we also note that the two are undeniably related. The Kelly document contained complaints against Cardon, and performance evaluations could, theoretically, contain the same. More important are the similarities between the Kelly document, the personnel files in *Bradley*, and the settlement agreements in *Detroit Free Press*. Although characterized as a "reverse FOIA" action, the *Bradley* Court applied standard FOIA principles when analyzing the issue presented. See *Bradley*, 455 Mich at 291-300. The personnel records contained "corrective or disciplinary actions, *complaints filed*, and *performance evaluations*" against the teachers. *Id*. at 294 (emphasis added). The *Bradley* Court held that the files were disclosable. *Id*. at 300. Complaints and performance

---

[7] As defendants correctly contend, an attorney general opinion is not binding on the Court. See *Frey v Dep't of Mgt and Budget*, 429 Mich 315, 338; 414 NW2d 873 (1987).

evaluations were treated seemingly the same way by the *Bradley* Court, and we discern no persuasive reason to deviate in the present case. See also *Detroit Free Press*, 480 Mich at 1079.

*Bradley*, *Detroit Free Press*, and *Titus*, when read together, suggest that, although the minutes and transcripts of a closed session are exempt from disclosure, various documents that may be relevant to or relied upon in the same are *not* necessarily exempt. In other words, the exact discussions and deliberations of those involved within the closed session are exempt; however, documents, such as personnel files, settlement agreements, and performance evaluations, that are brought into the closed session are disclosable where no individualized exemption exists for the same. See *Bradley*, 455 Mich at 291-300; *Detroit Free Press*, 480 Mich at 1079. The Kelly document was one such document. And, while there may be situations in which such documents are not disclosable; for purposes of this appeal, we hold that the trial court correctly concluded that the Kelly document was disclosable under FOIA, and that defendants could not render the document exempt merely because it was a subject of the closed meeting.

## III. OMA VIOLATIONS

Plaintiff contends that the trial court erred in partially granting defendants' motion for summary disposition because defendants violated the OMA by hiring Pavelka without adequately addressing the same in a public meeting. At the very least, plaintiff suggests that genuine issues of material fact existed as to that issue. We disagree.

Under the OMA, "[a]ll meetings of a public body must be open to the public and must be held in a place available to the general public." MCL 15.263(1). Similarly, "[a]ll decisions of a public body must be made at a meeting open to the public," MCL 15.263(2), and "[a]ll deliberations of a public body *constituting a quorum* of its members must take place at a meeting open to the public except as provided in this section and sections 7 and 8 [i.e., closed sessions]," MCL 15.263(3) (emphasis added). The OMA's purpose "is to promote governmental accountability by facilitating public access to official decision making and to provide a means through which the general public may better understand issues and decisions of public concern." *Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 419; 925 NW2d 897 (2018) (quotation marks and citations omitted).

In the present case, plaintiff contended that, although defendants named Pavelka to be the interim superintendent at an open meeting, there was no deliberation or decision at that or another open and public meeting involving the offer to Pavelka or any other candidates. Plaintiff, therefore, maintained that the actual decision to choose Pavelka was reached outside an open meeting and in violation of the OMA. We conclude that the record provides no support for plaintiff's position and, instead, works against it. At the relevant open meeting, a motion was put forth to name Pavelka as the interim superintendent, and all TCAPS members approved. Kelly affirmed that she "had a discussion with [Pavelka] in order to gauge whether or not he would consider acting as TCAPS Interim Superintendent on a temporary basis" and that this discussion "did not advance beyond whether he would consider returning and no agreement for his return was made during our conversation." Kelly further affirmed that, at the time of the open meeting, on October 17, 2019, "there had been no acceptance of any position or discussion of any contract terms pertinent to the position." In fact, the record shows that TCAPS's contract with Pavelka was formally ratified at a subsequent open meeting on October 28, 2019.

In other words, the record evidence establishes that Kelly and TCAPS properly met in an open meeting on October 17, 2019, and made the decision to hire Pavelka as interim superintendent. Kelly affirmed that, although she approached Pavelka about the position, no decision was made, and no contractual terms were discussed; the meeting was merely to inquire about his interest in the position. Kelly was by herself, and there was, accordingly, no quorum in place to trigger MCL 15.263(3). Plaintiff provided no evidence to rebut Kelly's affidavit or to show that there were improper deliberations made outside of the October 17, 2019 meeting with a quorum of TCAPS. We accordingly agree with defendants' contention that plaintiff's claims as to the OMA violation were mere speculation and unsupported by documentary evidence. See *McNeil-Marks v Midmichigan Med Center-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016) (noting that, although "[c]ircumstantial evidence can be sufficient to establish a genuine issue of material fact, . . . mere conjecture or speculation is insufficient").

Furthermore, plaintiff offered no authority below, and offers none on appeal, to show that the *quality* or *length* of deliberations was deficient for purposes of the OMA. The OMA merely requires that decisions and deliberations be made in an open meeting, MCL 15.263(2) and (3); it does not require that any specific *type* of deliberations take place. Kelly and TCAPS moved for Pavelka to be named interim superintendent, and the motion carried. The contract was subsequently ratified at another public meeting. Although plaintiff may be unhappy with the short length of the deliberations by defendants, plaintiff points to no authority to show this was improper. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted). When "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Id*. (quotation marks and citation omitted).

## IV. CONCLUSION

We hold that documents otherwise discoverable under FOIA are not generally rendered exempt merely because they provide the basis for a closed meeting under the OMA or are included in the official record of the same. The trial court therefore did not err by granting partial summary disposition to plaintiff as it related to disclosure of the Kelly document. We further conclude that the trial court did not err by partially granting defendants' motion as it related to the alleged OMA violation concerning defendants' hiring of Pavelka.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher